(February 27, 1904.)

## HILL v. MORGAN, JUDGE.

[76 Pac. 323.]

MANDAMUS—JUDICIAL OFFICER—PRELIMINARY QUESTIONS—SERVICE OF
SUMMONS ON CORPORATIONS—ALIAS SUMMONS—WHAT IT MUST
CONTAIN.

1. The rule that *mandamus* will not issue to control discretion or
revise judicial action has no application to the determination of
preliminary questions, relating to the sufficiency of the service of
summons.

2. When the tribunal or officer whose duty it is to take juris-
diction of a matter believing, erroneously, that it has no jurisdic-
tion, declines to consider the matter, *mandamus* will issue to com-
pel action.

3. Service of summons on a corporation is sufficient when it is
shown to have been served upon some one who had theretofore
been served with process, and the corporation accepted such ser-
vice by its appearance; and this is especially true where it is not
shown that the corporation, through its attorney or someone au-
thorized to act for it, did not inform the party in interest how
better service could be made.

4. An *alias* summons that substantially complies with the origi-
nal is not defective as to form under the provisions of section 4141,
Revised Statutes of Idaho.

5. A summons that states the names of the parties to the ac-
tion, the court in which it is brought, the county in which the
complaint is filed, a statement of the nature of the action in gen-
eral terms, a direction that the defendant appear and answer, and
if for damages, a notice that unless defendant so appears and an-
swers, the plaintiff will apply to the court for the relief demanded
in the complaint, is not defective under the provisions of section
4140, Revised Statutes, even though it does state the amount de-
manded.

(Syllabus by the court.)

ORIGINAL proceeding in this court for a writ of mandate.
Application for writ granted.

The facts are stated in the opinion.

A. G. Kerns, for Plaintiffs.

The writ properly lies in cases where inferior courts refuse to take jurisdiction where by law they ought to do so, or where, having obtained jurisdiction in a cause, they refuse to proceed in the due exercise thereof. (*Ex parte Parker,* 120 U. S. 737-743, 7 Sup. Ct. Rep. 767, 30 L. ed. 818, and cases cited.)   The writ will lie to vacate an order vacating the service of process on the defendants. (*People v. Wayne Circuit Judge,* 22 Mich. 493; *People v. Swift,* 59 Mich. 529, 26 N. W. 694.)   *Mandamus* lies to compel a court to proceed where it has wrongfully decided, on preliminary motions, it has no jurisdiction. (Merrill on Mandamus, secs. 36, 46, 203-207.)   If the original summons and the *alias* summons were sufficient in form and substance, and did not mislead the defendants upon whom served to their prejudice, the service was good and the court acquired jurisdiction.   The defendants made no showing that they had been misled to their prejudice or otherwise by the summons, or its service. (Idaho Rev. Stats., sec. 4140; *Betwick et al. v. Muir et al.,* 83 Cal. 368, 23 Pac. 389.)   It is manifest without argument that a defect in the summons which will be sufficient to constitute it void or erroneous must be of such a character as to mislead the defendant to his prejudice, and to prejudicially affect, or tend to affect, some substantial right. (*Rich v. Collins et al.,* 12 Colo. App. 511, 56 Pac. 207; *People v. Dodge,* 104 Cal. 487, 38 Pac. 203; *Clark v. Palmer,* 90 Cal. 504, 27 Pac. 375.)   The sheriff's return of service of summons on a corporation by delivering a copy of the process and complaint to an officer raises a presumption that such person is an officer as stated in the return.   This presumption is not rebutted by a mere denial by the officer or person served.   The corporation should show who is its officer upon whom process might be served.   It must give the plaintiff a better service. (4 Thompson on Corporations, 4626, 4698; *Salt Lake Foundry etc. Co. v. Mammoth M. Co.,* 6 Utah, 351, 23 Pac. 760; 6 Thompson on Corporations, 7509, 7515, 7524, 7546; *Badger v. United States,* 93 U. S. 599-604, 23 L. ed. 991.)   The supreme court will review the decision of a lower court, on a petition for writ of mandate, where the judge refuses to proceed with the trial of a cause upon the ground that the summons is defective in ma-

terial parts, and by reason of such defects no jurisdiction over the person of the defendant has been obtained, and if the decision is found erroneous will issue the writ. (*Stanquist v. Hebbard*, 122 Cal. 268, 54 Pac. 841.)

C. W. Beale, for Defendant.

*Mandamus* will not lie in the matter of judicial discretion. (*Board of Commrs. v. Mayhew*, 5 Idaho, 572, 51 Pac. 411-414; *Francisco v. Manhattan Ins. Co.*, 36 Cal. 283; *People v. Weston*, 28 Cal. 640; *Lewis v. Barclay*, 35 Cal. 213; *Havens v. Stewart*, 7 Idaho, 298, 62 Pac. 682.) The writ will not lie while there is a plain, speedy and adequate remedy at law. (*Wright v. Kelley*, 4 Idaho, 624, 43 Pac. 565; *In re Rice*, 155 U. S. 396, 15 Sup. Ct. Rep. 149, 39 L. ed. 198; *American etc. Co. v. Jacksonville etc. Ry. Co.*, 148 U. S. 372-379, 13 Sup. Ct. Rep. 758, 37 L. ed. 486.) The service of a summons on a person not longer or at the time of service not an officer of a corporation is not sufficient to support a judgment. (*Thum v. Pyke*, 8 Idaho, 11, 66 Pac. 157.) Service of summons to be good must be made in the manner prescribed by the statutes, and all of the statutes must be complied with. (*Applington v. G. V. B. Min. Co.*, 6 Idaho, 216, 55 Pac. 241; *Strode v. Strode*, 6 Idaho, 67, 96 Am. St. Rep. 249, 52 Pac. 161.) Summonses must contain all that is required by statute, whether deemed needful or not. (*Ward v. Ward*, 59 Cal. 139.)

STOCKSLAGER, J.—This is an original proceeding in this court. The petitioners file their petition for a writ of mandate, viz.:

"Josiah Hill and J. S. Hill respectfully petition for a peremptory writ of mandate commanding and requiring Ralph T. Morgan, judge of the district court of the first judicial district of the state of Idaho, in and for the county of Shoshone, to proceed with the trial of an action pending in said district court wherein these petitioners are plaintiffs, and the Standard Mining Company, Richard Wilson, Walter Mackay, William R. Leonard, James Leonard and A. L. Scofield, copartners doing business under the firm name of the Mammoth Mining Company, are defendants, and to exercise jurisdiction over the de-

fendants served in said action, and for all other and proper general relief.

"This petition is based upon the accompanying affidavit of Josiah Hill, and exhibits to be filed in this court with this petition."

The affidavit of Josiah Hill, after stating that he is one of the plaintiffs and that defendant is the judge of the first judicial district of Idaho, states that on the thirtieth day of September, 1903, plaintiffs commenced an action against the Standard Mining Company, a corporation organized and existing under the laws of the state of Idaho, Richard Wilson, Walter Mackay, William R. Leonard, James Leonard and A. L. Scofield, copartners doing business under the firm name of the Mammoth Mining Company, to recover damages sustained by plaintiffs by reason of the overflow of their lands by tailings from the mining works of defendants, by filing a duly verified complaint in due form of law in the office of the clerk of the district court of the first judicial district of the state of Idaho, in and for the county of Shoshone, and on the same day a summons in due form of law was issued out of said court in said action by said clerk, and on October 7, 1903, was served on A. L. Scofield; on October 14, 1903, served on the Standard Mining Company; and on October 19, 1903, was served on James Leonard, defendants therein named, by delivering a copy of the summons and a copy of the complaint in said action to each of said defendants, and said summons was on October 23, 1903, returned into court by said sheriff with a return indorsed thereon showing such service and that the other defendants could not be found; that a copy of said summons and the return indorsed thereon and the amended return made thereon is hereto attached marked exhibit "A" and made a part of this affidavit.

That each of said defendants served appeared specially by their counsel and moved to quash said summons and the service thereof on the ground that said summons did not contain matters required by paragraphs 2 and 4 of section 4140 of the Revised Statutes.

That on October 27, 1903, an *alias* summons was issued in said action by the clerk of said court on the application of

plaintiffs, and service was made on Richard Wilson, Walter Mackay and another service was made on the Standard Mining Company.

Copies of the summons, the *alias* summons and the motions to quash were filed and made part of this affidavit. That each of said defendants served appeared specially by their counsel and moved to quash said summons and the service thereof on the ground that said *alias* summons did not contain matters required by paragraphs 2 and 4 of section 4140, Revised Statutes.

That on December 1, 1903, all of said motions of defendants were submitted to and by the court taken under advisement, and thereafter on December 4, 1903, each of said motions was sustained by defendant as judge of said court. Plaintiff then and there in open court requested defendant as such judge to enter the default of each of such defendants served in said action and that the trial of the cause against the defendants served proceed on its merits. Defendant then and there, as such judge, denied such requests and ever since has, and does now, refuse to proceed with the trial of said cause.

That on December 5, 1903, a new summons was issued in said cause by order of the court in form as an original, and on the eighth day of December, 1903, was served by the sheriff on the Standard Mining Company by delivering to and leaving with A. H. Fox, the secretary and treasurer of said corporation, a copy of said summons and a copy of the complaint, and on December 22, 1903, said summons was returned with such service indorsed thereon, and that none of the other defendants could be found in the state of Idaho, and thereupon the default of the Standard Mining Company was, by the defendant as such judge, entered in said cause.

That said defendant, Standard Mining Company, appeared in said action and filed a motion to quash and set aside said new summons and the complaint, and to quash and set aside the service of said summons and complaint on the ground that the A. H. Fox mentioned in the sheriff's return was not the secretary or cashier of said corporation.

That on January 4, 1904, this affiant and his coplaintiff, by their counsel, filed in said court in said action a motion to

strike from the files the motion of the Standard Mining Company to quash the summons and complaint and service thereof, accompanied by an affidavit of C. W. Betts, the deputy sheriff who made the return, showing that Fox was the secretary and treasurer of said corporation; and as such secretary and treasurer had received the service of process in a great many other cases for said corporation, and that the corporation adopted the acts of said Fox as its own, and also filed an affidavit of this affiant.

That upon the hearing of said motions, the motion to strike by the plaintiffs was denied, and the motion of the Standard Mining Company was sustained to the extent of setting aside the service of the summons and complaint·by the defendant as judge of said court.

That plaintiffs, by their counsel, then and there, in open court, requested defendant as judge to proceed with the trial of said cause on its merits against the defendants served, and the defendant as judge of said court then and there refused and ever since has refused, and does now refuse, to proceed with the trial of said cause against the defendants so served, or any of them.

That on December 31, 1903, this affiant and his complaintiff, by their counsel, in writing notified and required the Standard Mining Company to produce for the inspection of the plaintiffs in said cause its journal of proceedings, check-books and stubs and other records, at the hearing of its motion to quash, and said corporation then, and at all times since has, refused to disclose to the plaintiffs the name or address of any officer or person upon whom process might be served; and on the fourth day of January, and prior to the hearing of said motions, in open court, the plaintiffs requested the judge of said court to require the said corporation to disclose the name and address of an officer in Idaho, upon whom process might be served, and the defendant then and there, and at all times since has, refused to make such order.

That on the fifth day of January, 1904, this affiant and his coplaintiff, by their counsel, in writing requested the defendant herein as judge of said court to reconsider his ruling, holding the court had no jurisdiction of said cause, and to proceed with trial and determination of said cause on its merits, and

the defendant as such judge has refused to reconsider his said decision and at all times has refused to proceed with the trial of said cause.

That the November, 1903, term of said district court was in session on said fifth day of January, 1904, and has not adjourned, and affiant is informed and believes will not adjourn before January 29, 1904.

That affiant is informed and believes the Standard Mining Company aforesaid has transferred all its property in Idaho to the Federal Mining and Smelting Company, a foreign corporation, and that all its officers excepting A. H. Fox, its secretary and treasurer, upon whom the last process in said cause was served, have removed from the state of Idaho, and now claim to be nonresidents of Idaho, and that all the books and records of said corporation have been removed from Idaho to Spokane, Washington, since the commencement of said action, and that all of said acts were performed by said defendant and its officers for the express purpose of preventing plaintiffs from securing any other service of process in said cause.

That all of the other defendants in said cause upon whom process was served removed from the state of Idaho immediately after the making of said service of process, and have continuously remained absent from Idaho since said time, and this affiant and his coplaintiff are unable to secure another personal service of summons upon said defendants, and have no other plain, speedy and adequate remedy in the ordinary course of law than by their petition to this court for a writ of mandate commanding and requiring the defendant, as judge of said court, to proceed with the trial of said cause against the defendants served.

At the time the application was filed, January 19, 1904, the following answer was filed:

"I, Ralph T. Morgan, judge of the district court of the first judicial district of the state of Idaho, in and for the county of Shoshone, do hereby acknowledge the receipt of due notice of the plaintiff's intention to apply for a writ of mandate herein; and do hereby certify that the affidavit for the writ and the exhibits referred to embrace a full and fair statement of the

facts in said cause, and I hereby consent to a hearing and determination of said cause upon such showing.

"R. T. MORGAN,
"The Defendant Above Named."

Thereafter and on the twenty-first day of January, 1904, this court received the following telegram from the defendant judge, to wit:

"I request suspension writ mandate Hill versus Morgan Judge by wire until defendant can be heard answer signed by me under misrepresentation of facts parties leave for Boise tomorrow with complete record asked to be heard Monday, 25. Answer.                    (Signed)          "R. T. MORGAN,
"District Judge."

This request was granted by the court and on the twenty-seventh day of January, 1904, defendant filed his answer, putting in issue all the material issues of the petition of plaintiffs.

It can be seen by the petition of the plaintiffs that the questions for determination are: 1. Is this action on the part of petitioners an attempt to control the discretion of the district judge, or is it an action to require him to perform a duty enjoined upon him by the statute?    2. Did the district court obtain jurisdiction of the defendants, or any of them, by what purports to be service of the original summons, the *alias* summons or what is termed the new summons ordered by the court after sustaining motions to quash the original summons and the *alias* summons and the service thereof?

If the contention of defendant that the court was acting within its discretion in sustaining motions to quash the summons, *alias* summons and the new summons, or if by asking for the issue of the new summons petitioners waived any error that may have theretofore existed, then it will be unnecessary for us to pass upon the sufficiency of either summons.

Counsel for defendant very earnestly insists that the court was acting within its discretion in passing upon the sufficiency of either summons to ascertain whether jurisdiction has been acquired by the return of the officer; that "the determination by the court of the question of sufficiency of a summons involves

just as much an exercise of judicial discretion as in passing upon the sufficiency of a complaint."

In support of this contention counsel call our attention to the case of *Board of County Commissioners, Shoshone County, v. Mayhew,* 5 Idaho, 572, 51 Pac. 411, decided by this court December 8, 1897. In this case the syllabus says: *"Mandamus* will not lie to reverse the order of an inferior tribunal continuing the hearing of an action or proceeding before it, when such inferior tribunal is exercising a judicial discretion vested in it by law."

We cannot see the application of this case to the one at bar. Applications for the continuance of a cause always appeal to the sound discretion of the trial court, and unless there is an abuse of such discretion shown, the order will never be disturbed. In the case at bar the court was not called upon to exercise its discretion, but to say whether the summons was sufficient to give it jurisdiction to hear the cause. This duty is enjoined upon the court by law and is in no sense a discretionary act. Merrill on Mandamus, in discussing this question, section 36, says: "When the tribunal or officer whose duty it is to take jurisdiction of a matter, believing, erroneously, that it has no jurisdiction, declines to consider the matter a *mandamus* will issue to compel such a hearing." Section 203, same author: *"Mandamus* lies to compel a court to try a cause when it refuses to do so upon the erroneous decision that it has no jurisdiction." Section 204, same author, says: "When a court for any cause improperly refuses to proceed in a cause, *mandamus* lies to compel action. In such cases the court is required to proceed, but is not instructed to adopt any particular conclusion or judgment."

The Michigan supreme court, in *People v. Hosie, Judge,* 22 Mich. 492, held that where it was shown that service had been made by the sheriff, and the circuit court, on motion, orders such service to be set aside as unauthorized by statute, *mandamus* will be granted to compel said court to vacate said order.

In *People v. Swift, Judge,* 59 Mich. 529, 26 N. W. 694, the third clause of the syllabus says: "It is well settled that a decision quashing an indictment may be reviewed, the only ques-

tion being what is the better form of review; in such case *mandamus* is the more appropriate remedy."

*State of Nevada v. Murphy, District Judge,* 19 Nev. 89, 6 Pac. 840, it is said: "The rule that *mandamus* will not issue to control discretion or revise judicial action has no application to the determination or preliminary questions relating to the settlement of a statement on motion for a new trial."

It is urged by counsel for defendant that "petitioners do not show that they have any valid or legal cause pending in said lower court in order to justify the granting of such a writ." This is wholly unnecessary to determine the questions before us; it would seem that this case has never advanced to the determination of that question in the lower court. Until the question of jurisdiction is determined, it is unnecessary for that court to pass upon the sufficiency of the pleadings, and that question is not here for review. The petitioners are in this court asking for a determination of the sufficiency of the service and not the pleadings, and if it is true, as shown by defendant's answer that we are furnished with a complete record of all the proceedings had in the lower court, then we are provided with all the facts before that court as to the sufficiency of such service, and hence able to determine the legal question as to whether sufficient service has been made on the defendants in the lower court. The act of the trial court in passing upon the sufficiency of the service of the summons was enjoined upon him by law, and in no sense a discretionary act.

Counsel for defendant urges that petitioners waived any error that may have existed as to the sufficiency of the summons, and the *alias* summons and the service thereof as shown by the return thereon when their counsel asked for an order for the new summons. This it is shown was after a motion had been sustained to quash both and the service thereon, and an exception to each ruling of the court had been reserved by petitioners.

It would seem from the record before us that counsel for petitioners was laboring very earnestly to get a service on the defendants or some of them that would give him an opportunity to be heard on the merits of the case. It also appears that

counsel for defendant was in court at the proper time, appearing specially for the purpose of his motions to quash the summonses and the service, and was successful in each attempt. Now, to say that because petitioners made these attempts to procure service, and by the ruling of the court failed in each effort, and took his exceptions to each and every ruling of the court, he has lost any right he may have acquired in an attempt to procure service does not impress us as being a safe rule of practice.

This brings us to an examination of the sufficiency of the service of either of the summonses on any of the defendants. It is urged by counsel for defendant that the original summons in this action does not comply with the statute, in that it did not describe the location of any property so that the same could be a guide to any person. The summons and the return thereon by the officer follows:

## "EXHIBIT 'C.' "

*"In the District Court of the First Judicial District of the State of Idaho, in and for the County of Shoshone.*

"Josiah Hill and J. S. Hill,

Plaintiffs,

vs.

The Standard Mining Company, Richard Wilson, Walter Mackay, James Leonard, William R. Leonard and A. L. Scofield, Copartners Doing Business Under the Firm Name of the Mammoth Mining Company,          Defendants.

## "SUMMONS.

"State of Idaho to the Standard Mining Company, Richard Wilson, Walter Mackay, James Leonard, William R.. Leonard and A. L. Scofield, Copartners Doing Business Under the Firm Name of the Mammoth Mining Company, Defendants:

"You are hereby notified that there is now on file in the office of the clerk of the district court of the first judicial dis-

trict of said state, in Wallace, county of Shoshone, the complaint of the above-named plaintiffs, wherein plaintiffs complain and allege that at all the times hereinafter mentioned the defendant, Standard Mining Company, was and now is a mining corporation duly organized and existing under the laws of the state of Idaho; that at all the times hereinafter mentioned said Standard Mining Company and Richard Wilson, Walter Mackay, James Leonard, William R. Leonard and A. L. Scofield, were and now are copartners doing business under the firm name of the Mammoth Mining Company. That the plaintiffs are now and at all the times since the month of March, 1886, have been the owners in the possession and entitled to the possession of the following described tracts, pieces or parcels of land situated along, contiguous and adjacent to that certain stream of water known as the south fork of the Coeur d'Alene river and adjoining and adjacent to the town of Kellogg, in Shoshone county, state of Idaho, to wit: That portion of the N. W. quarter of the N. E. quarter of section number six, township number forty-eight north, range number three east of Boise meridian, known as lot No. 2 (2). Also, beginning at the S. W. corner of the N. E. quarter of the N. E. quarter of section number six, township number forty-eight, range number three east of the Boise meridian, known as lot No. 1; thence N. 85 degrees 34' east, 147.7 feet; thence N. 29 degrees 19' east, 405 feet; thence N. 58 degrees 30' W., 51.2 feet; thence N. 25 degrees 20' E., 277 feet; thence N. 40 degrees 38' E., 253.8 feet; thence N. 44 degrees 28' W., 357.2 feet; thence N. 35 degrees 15' W., 331.2 feet; thence S. 6 degrees 4' W., 1367.3 feet to the place of beginning. Also a parcel of land known as tract 'B' and situated in the N. W. corner of the N. E. quarter of the N. E. quarter of section No. 6, township No. 48 north, range No. 3 east of the Boise meridian. Also that portion of the S. W. quarter of the N. E. quarter of section number six, township forty-eight north, range three east of the Boise meridian lying and being described as follows, to wit: Beginning at the N. E. corner; thence W. 80 rods; thence S. to the center of the natural channel of the south fork of the Coeur d'Alene river; thence up the center of the river

to the place of beginning. That said lands of the plaintiff were, prior to the happening of the injury hereinafter described, level, fertile and tillable, and contained natural meadows, and were well adapted to producing hay and other agricultural products and for orchard and grazing purposes, and were of great value for townsite and building purposes, and as meadow, hay, grazing, orchard and farming lands, and annually yielded to the plaintiffs more than two thousand dollars. That the said Coeur d'Alene river where it flows through, across, by, adjacent and contiguous to plaintiffs' said land, was, prior to the happening of the event hereinafter described, confined to a well-defined channel between banks eight or ten feet in height, and the waters thereof were, at all seasons, free and clear of pollution and used by the plaintiffs for all domestic and agricultural and pasturing purposes. That for more than ten years last past the defendants have been the owners and in the possession of those certain lode mining claims situated on Canyon creek, a tributary of the south fork of the Coeur d'Alene river aforesaid above the lands of the plaintiffs, known as the Mammoth group of mining claims and jointly engaged in mining and extracting the lead and silver ores therefrom and reducing such ores and metals to concentrates for shipment by means of reduction works, concentrators and other mining appliances situated on the banks of said Canyon creek, and owned and operated by the defendants under the name of the Mammoth Mining Company. That in the process of reducing said ores and metals to concentrates the defendants have been extracting from said mining claims and treating from three hundred to one thousand tons of rock, earth, stone, ore, metals and other materials per day during all of the period of time for ten years last past by crushing and breaking the said material in said concentrators and reduction works, and separating, saving and retaining for shipment a portion of the lead, silver and other metals and minerals, and during all of the said period of.time the defendants have wrongfully, unlawfully and without the plaintiffs' consent cast and deposited the waste material, consisting of rock, earth, stone, tailings, slime and poisonous substances from said reduction works and concentrators into the said Canyon creek, thereby filling the banks and polluting and

defiling said stream. That by the natural flow of the waters of said Canyon creek the rock, earth, stone, sand, slimes, tailings and poisonous substances so cast into said stream by the defend- ants as aforesaid have been washed, carried and deposited into the south fork of the Coeur d'Alene river aforesaid, thereby filling the banks and polluting and defiling said stream; and by the natural flow of the waters of said south fork of the Coeur d'Alene river portions of said waste material of rock, earth, sand, stone, tailings, slime and poisonous substances, so cast and deposited into Canyon creek aforesaid by the defend- ants, have been washed, carried and deposited into that portion of the natural channel of the south fork of the Coeur d'Alene river, which passes over, along, through and across the lands of the plaintiffs hereinbefore described, thereby filling the banks of said river at said point with said rock, earth, stone, sand, tailings and poisonous substances and polluting and defiling said stream, and causing the waters of said stream to overflow the natural banks of said stream and wash, carry, spread and de- posit upon, over and across the above-described lands of the plaintiffs the rock, earth, stone, sand, tailings, slimes and pois- onous substances so cast into Canyon creek by the defendants, thereby poisoning and totally destroying said lands of the plaintiffs for agricultural, grazing, farming and townsite pur- poses, and rendering the occupation and use of said premises dangerous to the health of the plaintiffs. That by reason of the filling of the natural channel of the said south fork of the Coeur d'Alene river with said rock, earth, sand, stone, tailings, slime and poisonous substances so cast into Canyon creek as aforesaid by the defendants, and the deposit of portions of said poisonous material upon the lands of the plaintiffs, the flow of the waters of said stream have been obstructed to such an extent as to cause the waters of said stream to be diverted from its natural chan- nel and the lands of the plaintiffs a distance of more than four hundred feet, except at times of high water when the overflow from the new channel annually carried and deposited upon the lands of the plaintiffs other rock, earth, stone, sand, tailings, slimes and poisonous substances so cast into Canyon creek by the defendants. That by reason of the injury to and destruc- tion of the lands of the plaintiffs by the acts of the defendants

as hereinbefore alleged and the pollution and diversion of the waters of the south fork of the Coeur d'Alene from the natural channel of the stream on the lands of the plaintiff, the plaintiff has been damaged in the sum of $12.000.

"Wherefore plaintiffs demand judgment against the defendants, and each of them, for the sum of $12,000 and the costs of this action, and pray that by said judgment the continuation of the said nuisance may be enjoined.

"And you are also notified that unless you appear and answer to said complaint within ten days after the service hereon, if served within Shoshone county, and within twenty days, if served out of said county, but within said judicial district, and within forty days if served out of said district (exclusive of the day of service), the plaintiff will take default against you and apply to the court for the relief demanded in the complaint and filed herein.

"Given under my hand and the seal of the district court of the first judicial district of the state of Idaho, in and for the county of Shoshone, this fifth day of December, A. D. 1903.

"(Seal)          STANLEY P. FAIRWEATHER,
                                        "Clerk.
                         "By A. H. Conner,
                                 "Deputy Clerk.

"Indorsed—Filed on return Dec. 22, 1903.
          "Sheriff's Office, Wallace, Idaho.

"State of Idaho,     ⎱ ss.
County of Shoshone. ⎰

"I, Charles Manley, sheriff of the county of Shoshone, state of Idaho, do hereby certify that on the eighth day of December, 1903, I received the within summons, and on the same day personally served the same on the Standard Mining Company, a corporation, one of the defendants named therein, by delivering to and leaving with A. H. Fox, the secretary and cashier of said corporation in Idaho, at Wallace, in Shoshone county, state of Idaho, a true and correct copy of said summons and a copy of the complaint in said action. I further certify that I am personally acquainted with A. B. Campbell, the president of said corporation, and said Campbell is now a nonresident of

the state of Idaho, and I have been unable, after due and diligent search, to find him in the state of Idaho.

"I further certify that I am personally acquainted with Richard Wilson, Walter Mackay, James Leonard, William R. Leonard and A. L. Scofield, the other defendants named in said summons; that I have made due and diligent search to find each of them in this county and state, by making inquiries of their business associates at their places of business when in Idaho, and have been informed by such associates of said defendants that each of said defendants is absent from the state of Idaho; I further certify that I have been unable to find any of said defendants in this county and state, and therefore return this summons as to said defendants, not served.

"Dated this 22d day of December, 1903.
                    "(Signed)     CHARLES MANLEY,
                                            "Sheriff.
                              "By C. W. Betts,
                                            "Deputy."

It would seem that the statement in the body of the summons is simply sufficient to notify the defendants that the plaintiffs claim they are damaged in the sum of $12,000 by reason of the mining operations of the defendants conducted on the shores of Canyon creek, large quantities of rock, earth, etc., have been carried down the said creek and into the south fork of the Coeur d'Alene river and from thence deposited on the lands of plaintiffs rendering them valueless for any purpose. We think the summons is a sufficient compliance with the statute. It is next urged that the *alias* summons is not in the same form as the original, and he cites section 4141 of the Revised Statutes. It says:

"If the summons is returned without being served on any or all the defendants, the clerk, upon the demand of the plaintiff, may issue an *alias* summons in the same form as the original."

Upon examination and comparison of the *alias* with the original summons, we find this difference. The original says: "That by reason of the aforesaid acts the plaintiffs have been damaged in the sum of $12,000." The *alias* says: "That by reason of the aforesaid acts of the defendants, as such mining partners, the plaintiffs have been damaged in the sum of $12,-

000." It will be observed that the language of the section of the statute above cited is that the *alias* must be in the same form as the original, not the same language. Is there any difference in the form of the *alias* summons? Could it mislead anyone interested in the litigation? Is there an attempt to change the nature of the action, or the demand for relief? If not, and there certainly is not, it is a compliance with the statute.

It is next urged that the *alias* summons can only issue on the demand of the plaintiff, and must then be issued by the clerk; this is true. Counsel says: "There is a total absence in the record of any application ever having been made by the plaintiffs for the issuance of this pretended *alias* summons and in the absence of such an application the clerk had no authority to issue any." Granting all this to be true, is it not presumed that officers perform their duties, and is it not presumed that the clerk only issued this summons when requested to do so by plaintiffs or their counsel? This presumption certainly prevails in the absence of any showing to the contrary.

This brings us to a consideration of the only remaining question in the case. Was the service of the original summons, or the *alias* summons sufficient to give the higher court jurisdiction? If so, the motions to quash the service should not have been sustained. The return of the officer on the original summons shows that he served the same upon the Mammoth Mining Company, a corporation, by delivering to A. L. Scofield, one of the members of said mining company named in said summons, a copy of the summons and a copy of the complaint, and on a later date he served copy of summons and complaint on E. H. Moffitt, the managing agent of said Standard Mining Company; thereafter he served a copy of the summons and complaint on James Leonard, one of the members of the company and named in the summons. By an order of the court he amended his return, which is shown in full on the return of the original summons. The return on the *alias* summons shows service on John A. Finch, as managing agent of said Standard Mining Company, of summons and copy of complaint. Charles W. Betts, the deputy sheriff of Shoshone county, who made re-

turn of service of the summons and the *alias* summons, makes the following affidavit:

"State of Idaho,    }
County of Shoshone. }   ss.

"Charles W. Betts, being first duly sworn, on his oath says: That since the twelfth day of January, 1903, he has been a deputy sheriff of Shoshone county, state of Idaho, and has had charge of the service of all papers, writs and other process directed to the sheriff of said county and making return thereon; and during said period of time affiant as such deputy sheriff has served numerous writs of attachment in various actions upon the Standard Mining Company, defendant, by delivering to and leaving with one A. H. Fox, who has charge of the books and records of said corporation, copies of said writs with notices annexed that money belonging to the debtors named in the process was levied upon and attached, and the said Fox made returns and statements thereon on behalf of said corporation to this affiant as such deputy sheriff, and never at any time during said period questioned the sufficiency of the service upon said corporation, and in none of said instances did said corporation question such service. Affiant further says that in pursuance of such services on the Standard Mining Company the said Fox delivered to this affiant as such deputy sheriff checks for the various sums of money levied upon and attached under said writs of attachment, or other process, and that such checks of the said Standard Mining Company were countersigned by the said Fox.

"This affiant further says that he has been acquainted personally with said Fox for more than three years last past, and knows of his own knowledge that during all of said period said Fox has been the bookkeeper of said corporation, and during the past two years this affiant believes said Fox has been acting as the cashier and secretary of said corporation in Idaho, and has signed his name to every check issued by the said Standard Mining Company, except such as were drawn during short periods of absence of said Fox.

"Affiant further states that he verily believes the amount of the checks drawn and signed by said Fox amounted to more

than $40,000 per month, and that the name of the Standard Mining Company was affixed thereto, and that said corporation authorized and empowered the said Fox to act as its secretary and cashier in drawing and signing said checks.

"Affiant further states that he has read the affidavit of A. H. Fox filed herein, and he denies the statement in said affidavit that the said Fox did not know or understand that the summons and complaint served on the Standard Mining Company and left with him on the eighth day of December, 1903, were left with him as the representative of said defendant, and this affiant states that he then and there stated to said Fox that he served the papers upon him and called his attention to the nature of the summons and complaint so delivered to and left with said Fox on December 8, 1903.

"Affiant further says that the service of said summons and complaint was made on said defendant corporation by delivering copies thereof to said Fox at the same office and place in the city of Wallace where the service of process in innumerable other cases has been served on said corporation by delivering copies of such process to said Fox.

"Affiant further states that he was informed by said Fox that all of the original books of said Standard Mining Company had been sent to Spokane, Washington, and were outside of the state of Idaho.

"Affiant is informed and believes that said corporation has sold all of its real property in the state of Idaho since the commencement of this suit, and that A. B. Campbell, the president, John A. Finch, the vice-president, and W. E. Finch, the secretary, prior to A. H. Fox assuming the duties of that office, have been nonresidents of the state of Idaho for more than one year last past and are now residents of Spokane, Washington.

"CHARLES W. BETTS.

"Subscribed and sworn to before me this fourth day of December, 1903.

"(Seal)                              THAD C. RIDDLE,
                                     "Probate Judge."

On the twenty-third day of December, 1903, C. W. Beale appeared specially for the Standard Mining Company and moved

the court to set aside and quash the summons and the service thereof.

The affidavit of A. H. Fox, says: "That on the eighth day of December, 1903, C. W. Betts, a deputy sheriff of Shoshone county, called at the office of the Federal Mining and Smelting Company, at Wallace, and asked affiant if he was the cashier of the defendant, the Standard Mining Company. Affiant stated that he was not the cashier of said defendant, was not an officer of defendant, was not an employee and did not in any capacity as an officer, agent or otherwise represent the defendant. That after some further conversation said Betts laid upon the desk of said Federal Mining and Smelting Company's office certain papers which affiant, on inspection, on the twenty-second day of December, 1903, found to be papers purporting to be copies of the summons and complaint in the above-entitled action. That at the time the papers were left as aforesaid he did not understand that the same were left there for him as the representative of the defendant, Standard Mining Company, and paid no further attention to same in view of the fact that he had stated to Betts that he in no capacity represented the defendant Standard Mining Company. That he never delivered said papers to said company or any officer, agent or representative of said defendant or to the attorney thereof, nor did he give any officer or the attorney of said company any notice whatever as to the facts of said papers being left upon said desk. That on the eighth day of December, 1903, affiant was not the president or other head of said defendant, nor the secretary, cashier or managing agent thereof, that he has not been at any time since eighth day of December, 1903, and is not now president or other head of said defendant, nor cashier, secretary or managing agent thereof; that said Betts knew of his own personal knowledge at the date of and at the time of making said return that his certificate to that effect in said return was false, fraudulent and untrue."

C. W. Beale testified that he was, and for more than one year had been, the attorney of the Standard Mining Company, one of the defendants and was familiar with all its legal business; that said Standard Mining Company did not have any knowl-

edge, information or notice of the pretended service of the sum-
mons and complaint in the above-entitled action upon it men-
tioned in the return of the officer, prior to the morning of the
twenty-second day of December, 1903, when it took immediate
action to investigate the pretended service, and has acted with
due diligence in the prosecution of its special motion to quash
the pretended service of said summons and complaint.

The affidavit of W. H. North corroborates the affidavit of Fox.
as to conversation with deputy sheriff Betts. This is the show-
ing made by the defendant Standard Mining Company to over-
come the return of the officer and his affidavit; that on many oc-
casions he had served the process of courts upon A. H. Fox as
the representative of the defendant, and that the company had
recognized the service by its appearance. It will be observed
that in the affidavit of Mr. Fox he does not deny that Betts,.
as deputy sheriff, had served papers upon him as the represen-
tative of the company, and that the company appeared and did
not question the service. He says he did not know what the
papers were, but relates a conversation between himself and
Betts that it would seem should have indicated to him that Betts
was seeking to serve the Standard Mining Company with some
kind of process. It is evident that Mr. Fox had been the rep-
resentative of the Standard Mining Company, and that Betts.
had served papers on him as the representative of the company
or it would be denied in the affidavit of Fox. The affidavit of
Mr. Beale shows that Mr. Fox did not deliver the summons
and copy of complaint to the defendant, and avers his diligence
in moving to quash the summons and service.

Upon this showing the court sustained the motion to quash.
the service of the summons; this was error. If the service
of process can be impeded in this way it is practically impossible
to procure service. If Mr. Fox had been in the employ of the
defendant company, and process had been served upon him by
this officer prior to his service, and the company had recognized
the service as sufficient, and this is not denied by the affidavit
of Mr. Fox or Mr. Beale, it was the duty of Mr. Fox to inform
the officer upon whom such service could be made at the time of
the service, or as soon as he discovered the character of the
papers left on the desk. It was also the duty of defendant or

its counsel to inform plaintiffs upon whom service could be made at the hearing of the motion.

If the contention of counsel for defendant is to be upheld, it would be practically impossible to procure service of summons or other process upon a corporation; they could avoid the payment of their just debts upon the plea that they had no officer within the jurisdiction of the court upon whom process could be made, until such time as it suited the convenience of the corporation to subject itself to the process of the court. As we understand it, the theory of the law is that proper service must be made on corporations, but when they come into court with an attack on the service of process they must inform the party seeking service how a better service can be made, and this information must come from someone authorized to speak for it. We have already said that the *alias* summons was sufficient under the provisions of sections 4140, 4141, Revised Statutes, and all parties shown to have been served by this process should have been required to plead to the complaint, and in case of failure their default entered.

With our view of the questions presented to us, it was error to sustain the motions to quash either the original or *alias* summons or the service thereof. The writ of mandate will issue as prayed for in the petition, and it is so ordered.

As the defendant judge is not the real party in interest, we assume the real party in interest will not permit him to pay costs. The costs of this proceeding are awarded to the plaintiffs.

Sullivan, C. J., and Ailshie, J., concur.

### ON PETITION FOR REHEARING.

(April 20, 1904.)

SULLIVAN, C. J.—A petition for a rehearing has been filed in this case. It, however, was not filed until after the writ of mandate had been issued and served on the defendant. The statutes of this state do not provide for a rehearing in any case decided by this court. The court has, however, by its rule No. 22, provided that applications for a rehearing may be made, and since the adoption of that rule a number of rehearings have been granted. The provisions of that rule do

not apply to cases of which this court has original jurisdiction. If they did, after a writ was granted the same could not be issued until the time had expired for filing a petition for a rehearing. Thus the very purpose of the writ would often be defeated by such delay.

On the hearing of the motion to quash and set aside the service of the summons on defendants Wilson and Mackay, it was shown that they were not residents of the state and that a copy of the complaint had not been served on them as required by law. For that reason the court did not acquire jurisdiction of their persons. The motion to quash the service of summons as to said defendants Wilson and Mackay was properly sustained.

The other defendants served with summons are given until the fourth day of April, 1904, in which to plead. A rehearing is denied.

Stockslager, J., and Ailshie, J., concur.