(No. 7263. October 24, 1945.)

STATE OF IDAHO, Plaintiff, v. CHARLES E. WINSTEAD, One of the Judges of the District Court of the Third Judicial District, for Ada County, Defendant.

[162 P. (2d) 894.]

Frank Langley, Attorney General, and Thos. Y. Gwilliam, Assistant Attorney General, for plaintiff.

Jess Hawley and Claude V. Marcus for defendant.

AILSHIE, C.J.—In May, 1943, suit was filed in the district court of the third judicial district, in the case of *State, Plaintiff, v. International Shoe Company, Defendant,* praying for judgment against defendant in the amount of $2,018.00 for excise taxes due plaintiff, under the Unemployment Compensation Law, together with interest amounting to $497.71, penalty in the amount of $504.50, and for other interest and penalty allegedly due on date of judgment, and costs of suit.

In June, 1943, service of summons, made under the provisions of sec. 5-507, subd. 3, I.C.A., was attempted. March 17, 1944, attachment issued and, April 13, '44, the defendant, International Shoe Co., moved that service of summons be quashed, for the reason that the company was not engaged in business within the state but was engaged in interstate commerce. Writ of attachment issued and the sheriff levied upon and took into custody two automobiles, a Dodge sedan and a Plymouth car, both *registered in the name of the International Shoe Company* and displaying 1945 licenses. The certificates of registration stated that the residence of the owner of the vehicles was in Ada county of this state. About July 24, 1944, the lower court made an order quashing the service. Stipulation was entered into between counsel for the parties and deposited with the sheriff, together with a bond, under which the shriff returned the attached automobiles to the possession of the agents of the International Shoe Co. The court made no order in pursuance of I.C.A., sec. 6-532.

July 26, '44, memorandum opinion was handed down by the lower court, holding that "defendant corporation is a foreign corporation engaged solely in interstate commerce, and is not doing business within the State of Idaho either generally or under the Idaho Unemployment Compensation Law; that the service of summons attempted to be made under sec. 5-507, subdivision 3, I.C.A., was invalid and did not give this court jurisdiction of such defendant; that the Motion to Quash is well taken and must be sustained."

Thereafter summons was again attempted to be served on order of the court dated September 8, '44, permitting service outside the state. September 18, '44, service was made and returned. Motion to quash this alleged service was made. May 11, 1945, a second memorandum opinion by the lower court was filed, holding that court to be without jurisdiction in the premises and that the motion to quash must be sustained. June 11, '45, an order quashing the service of summon was entered.

June 29, 1945, an application for writ of mandate was filed in this court, seeking issuance of an alternative writ, requiring and directing defendant judge to assume jurisdiction of the action against defendant, International Shoe Company, or to show cause before the court at a time set,

why he should not be compelled so to do. The application was accompanied by an affidavit of the secretary of the International Shoe Co., stating, among other things:

"That International Shoe Company is a corporation organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business in the city of St. Louis and State of Missouri; ,

"That it has qualified to do business in some eight states of the United States. . . that none of its factories, subsidiary plants or selling divisions are located in the State of Idaho;

"That it has not qualified to do business in the State of Idaho; . . .

"That it does not ship any goods into the State of Idaho for sale on consignment; that it does not make any contracts in the State of Idaho, and *does no intra-state business in the State of Idaho in any manner whatsoever;* . . .

"Salesmen for the International Shoe Company are limited in their work and authority to the solicitation of orders for merchandise from samples which are supplied to them by the Company's St. Louis, Missouri offices. Salesmen do not and cannot fix prices, nor accept orders, nor fill orders, nor deliver merchandise. . .

"All sales proceeds are payable at the offices of the Company in St. Louis, Missouri, and all collections of outstanding accounts are made by the Company from its offices in the State of Missouri.

"All compensation of salesmen is payable from the Company's office in the State of Missouri, and as to all of their activities salesmen are answerable to the Company in the State of Missouri." (Italics ours.)

Counter affidavit was filed by the attorney general's office, declaring:

"That the said International Shoe Company has within the State of Idaho at least three salesmen whose residences are within the State of Idaho, and at various times have had more or less than three such agents; that the said agents performed services for the said International Shoe Com-

pany by taking orders from various purchasers of shoes within the State of Idaho; and that the services performed for the International Shoe Company are performed both within the State of Idaho and outside the State of Idaho, but the principal part of the services rendered are within the State of Idaho;

"That one of the purposes for which the International Shoe Company was organized as shown in its Articles of Incorporation was for the sale and distribution of shoes; that the agents in Idaho are engaged in the sale and distribution of shoes."

Alternative writ of mandate issued July 21, '45, commanding Charles E. Winstead, district judge, to reassume jurisdiction of the action for unemployment compensation excise tax, to hear and dispose of the same, on its merits, without reference to the jurisdictional question, or to show cause to the contrary before this court on a day set. By order of this court, briefs were filed, including citations of authority in support of the application for writ and brief in opposition to the application.

■ Under the statute, sec. 13-302, I.C.A., and *Hill v. Morgan*, 9 Ida. 718, 76 P. 323, *Coeur d'Alenes Lead Co. v. Kingsbury*, 56 Ida. 475, 55 P. (2d) 1307, and *Mattice v. Babcock*, 52 Ida. 653, 20 P. (2d) 207, the writ of mandate is the proper remedy to test the jurisdiction of the trial court.

In *Hill v. Morgan*, supra, this court said:

"When the tribunal or officer whose duty it is to take jurisdiction of a matter believing, erroneously, that it has no jurisdiction, declines to consider the matter, *mandamus* will issue to compel action."

■ We now pass to the more important and decisive question on which the trial court acted, namely: Is the International Shoe Company *doing business* in the state, within the meaning of the unemployment compensation act and the generally accepted judicial opinion of what constitutes "doing business" in the state?

The company (International Shoe Company) contends that the district court had no jurisdiction of it because it

was engaged in interstate business exclusively. The facts disclose that, in addition to doing interstate business, it was furthering the objects and promoting the business thereof, through locally appointed and resident salesmen who used the company's properties in this state, namely, automobiles, for the solicitation of business, and in expediting making collections on sales, and generally looking after both intrastate and interstate business. Certainly, the company could not exonerate itself from the charge, that it was doing business in the state, and, at the same time, be procuring and using state licenses, admittedly to operate motor vehicles in the state, in pursuit of its interstate business.

Here the company invoked the protection of the state under its registration, traffic and transportation statutes and, while doing so, was using such transportation facilities and the licenses therefor made in furtherance of its interstate business. In the principal aspects of this case, it is very similar to *International Harvester v. Kentucky*, 234 U.S. 579, 34 Sup. Ct. 944, 58 L .ed. 1479, and *International Shoe Co. v. State* (Wash.), 154 P. (2d) 801.

In *International Harvester Co. v. Kentucky*, 234 U.S. 579, 58 L. ed. 1479, 1482, the Supreme Court of the United States said:

"Upon this question (doing business within the state) the case is a close one, but upon the whole we agree with the conclusion reached by the court of appeals, that the Harvester Company was engaged in carrying on business in Kentucky. . . Here was a *continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction.* The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing

business, and amenable to the process of the courts of the state...

"In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of shipment of machines into Kentucky. There was authority to receive payment in money, check, or draft, and to take notes payable at banks in Kentucky...

"We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the state." (Italics ours.)

(See Vol. 8, 1932 Supp. to Rose's Notes, pp. 372-378; 146 A.L.R., 961 n). The opinion in the above cases was quoted from and followed in *International Shoe Company v. State* (Wash.), 154 P. (2d) 801, 805.

It seems clear to us that Congress entertained a like view, on the subject of "doing business in the state", to that above expressed, in enacting the Unemployment Compensation Law (26 U.S.C.A., Int. Rev. Code, sec. 1606 (a) when it provided therein:

"No person required under a State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce, or that the State law does not distinguish between employees engaged in interstate or foreign commerce and those engaged in intrastate commerce."

The authorities on the subject of "doing business in the state" are multitudinous, as may readily be gathered from the majority and dissenting opinions in *International Shoe Co. v. State*, supra, decided by the Washington supreme court January 4, 1945. In order to show exactly on which side of the dividing line a case falls, any examination or analysis of the cases would be futile and of no avail here.

After all, the dividing line in many instances is so tenuous that it would be necessary to know the psychology of the writer in order to properly evaluate the conclusions of his reasoning. However, upon both authority and reasoning, we are persuaded that the case at bar is one wherein the company is clearly doing business within the state; and that the trial court had jurisdiction to determine the case on its merits.

What we have said herein is not intended, and should not be understood, as in any way modifying or departing from the conclusions reached by this court on this subject in the cases of *Belle City Mfg. Co. v. Frizzell,* 11 Ida. 1, 81 P. 58; *Foore v. Simon Piano Co.,* 18 Ida. 167, 178, 108 P. 1038; *Bonham National Bank, etc., v. Grimes Pass Placer Min. Co.,* 18 Ida. 629, 111 P. 1078; *Northern Pacific Ry. Co. v. Gifford,* 25 Ida. 196, 136 P. 1131, 235 U.S. 711, 35 Sup. Ct. 198, 59 L. ed. 436; *Bettilyon Home Builders Co. v. Phil-brick,* 31 Ida. 724, 175 P. 958; *Hoffstater v. Jewell,* 33 Ida. 439, 196 P. 194; *Perry v. Reynolds,* 63 Ida. 457, 462, 122 P. (2d) 508, in relation to what constitutes doing business or not doing business within the state.

It seems clear to us that the state of facts disclosed by the record herein should not be confused with those cases dealing with *single, isolated or casual transactions.*

In *Century Distilling Co. v. Defenbach,* 61 Ida. 192, 204, 99 P. (2d) 56, we said:

"It is asserted that, since respondent could not possibly legally sell its goods (liquor) to anyone in the state of Idaho but the commission, therefore, sales to the one customer only did not constitute 'doing business.' In advancing this argument, respondent fails to note the difference between making a single sale or an isolated transaction with one customer, and making several or many sales to a single customer. A foreign corporation might do an extensive and flourishing daily business, all with a single customer, in which case it would certainly be 'doing business,' within the meaning of the law. Nor does it seem to us that the fact, that the statute limits the field of possible customers or purchasers to a single one, renders the transaction had with that customer any less 'doing business,' than in the case where the corporation selects, of its own volition, a single customer to which it makes many sales.

" 'It is not the length of time that a foreign corporation is here, nor the volume of business done while here,—it is the purpose for which it comes that determines whether compliance with the statute is necessary. (*Hoffstater v. Jewell*, 33 Ida. 439 (444), 196 Pac. 194.)' (*Adjustment Bureau, etc., v. Conley*, 44 Ida. 148, 153, 255 Pac. 414.)" (See, also, *Boise Flying Service, Inc. v. General Motors Acceptance Corp.*, 55 Ida. 5, 17, 36 P. (2d) 813.)

The alternative writ is made permanent and the cause is hereby remanded to the trial court, with directions to assume jurisdiction and proceed with the case in such manner as to the court shall seem legal and just.

Givens, and Holden, JJ., concur.

Budge, J., dissents.

Miller, J., did not participate.