(No. 5954.   February 9, 1934.)

BOISE FLYING SERVICE, INC., Appellant, v. GENERAL
    MOTORS ACCEPTANCE CORPORATION, Respond-
    ent.

[36 Pac. (2d) 813.]

Harry C. Wyman and Thornton D. Wyman, for Appellant.

Richards & Haga, for Respondent.

HOLDEN, J.—The Moscow Air Transportation Company was the owner of an airplane. On or about August 1, 1931, it leased the airplane to one Virgil Adair. About August 10, 1931, the airplane was inspected by an inspector of airplanes of the United States and declared to be unfit for carrying passengers. The inspector ordered that the airplane could only be flown to either Spokane, Washington, Butte, Montana, or Boise, Idaho, for repairs. On or about August 20, 1931, the airplane was flown to Boise and placed with appellant for repairs, where, at the request of the owner and lessee, the airplane was repaired.

It appears that June 4, 1930, at Chicago, Ill., one H. S. Ruddach executed a chattel mortgage to Fokker Aircraft Corporation of America, covering the airplane, the mortgage having been given to secure the payment of the balance of the purchase price of the airplane, and was later assigned to the respondent. February 4, 1931, Ruddach gave a new note for the balance then due, which provided for payment in certain instalments. The mortgage provided that in the event of default in the payment of any of the instalments respondent could declare all unpaid instalments immediately due and payable, and, upon failure to pay the instalments, respondent declared the same to be immediately due and payable, and on September 3, 1931, commenced foreclosure of the mortgage by affidavit, notice and sale; the airplane was thereupon, and at the direction of respondent, seized by the sheriff of Ada county and taken from the possession of appellant and sold. It does not appear from the record that the said chattel mortgage, executed in Chicago, was ever filed for record in Ada county, or in any other county of the state of Idaho, nor does it appear that appellant had actual notice of the existence of said mortgage at the time the material was supplied and labor performed in the repair of the airplane.

February 9, 1932, appellant commenced a suit in the district court for Ada county to foreclose its statutory lien upon and to impress said airplane with such lien, for material so used and labor performed in the repair of the airplane. Thereafter, and on the same day, summons issued and on the next day was placed in the hands of the sheriff of Ada county for service. February 11, 1932, the sheriff made and filed the following return:

"STATE OF IDAHO.

"I, John McGrath, Sheriff of Ada County, Idaho do hereby certify and return that I received the annexed Summons on the 10th day of February 1932 and I further certify that I personally served the same on the 10th day of February 1932 on the defendant named in said Summons by delivering to and leaving with Stephen Utter, County Auditor of the said Ada County personally, at Boise, County of Ada State of Idaho, a copy of said Summons together with a copy of the complaint in said action attached to said copy of Summons, the said defendant being a foreign corporation and does not have any designated person or agent actually residing in Ada County, Idaho, the county in which the defendant is doing business in this state upon whom process can be served.

"Sheriff's fee, 1.80.

"JOHN McGRATH,
"Sheriff.
"By GEO. R. WEBSTER,
"Deputy."

March 19, 1932, the clerk entered the default of the respondent. March 26, 1932, appellant submitted proof in support of its complaint, and on the same day judgment was rendered and entered in favor of appellant.

May 16, 1932, respondent, a foreign corporation, made a special appearance and moved to vacate and set such judgment aside (the motion being supported by affidavits) upon the following grounds: That the judgment was void in that no personal service was made upon the respondent, or upon any of its officers; that the judgment was void in

that respondent at no time mentioned in the complaint, or at any other time, "was doing business in this state, and, accordingly, had no designated person upon whom process could be served as provided for service of process on foreign corporations doing business in the state of Idaho"; that service of summons "was made only upon the auditor of Ada County, Idaho, who did not forward the same to any office or officer" of the respondent.

Appellant filed affidavits in opposition to the said motion of the respondent to the effect that respondent was doing business in the state of Idaho.

June 9, 1932, an order was made and filed vacating and setting the judgment aside. This appeal is from that order.

The hearing of respondent's motion was upon affidavits and documentary evidence alone; therefore, "this court will make an original examination of the evidence as contained in the record and will exercise its judgment and discretion the same as if the case were being presented to us in the first instance." (*Parsons v. Wrble*, 19 Ida. 619, 115 Pac. 8, 13.) In other words, this court "will examine the record as though the matter had never been heard or examined by the trial court, and will exercise its discretion in the matter, the same as a trial court is authorized to do in such matters." (*Council Improvement Co. v. Draper*, 16 Ida. 541, 542, 102 Pac. 7.)

The controlling questions on this appeal are: 1. Was respondent "doing business" in this state as contemplated by subdivision No. 3 of section 5–507, I. C. A.? 2. Did substituted service give the district court jurisdiction to try the case and enter judgment against the respondent?

Subdivision No. 3 of section 5–507, I. C. A., provides as follows:

"Whenever any foreign corporation, nonresident joint stock company or association shall not have any designated person actually residing in the county in which said corporation or joint stock company shall be doing business in this state upon whom process can be served as provided

in section 29-502 of this code, or when the agent of such company as provided in said section shall have removed from, or ceased to be a resident, or can not after due diligence be found within the county where the action arose, or conceals himself in order to avoid the service of process, then service of such summons shall be made upon the county auditor of said county with like effect as though said service were made upon an agent or person appointed and designated as provided in said section 29-502, and it shall be the duty of such auditor to forward a copy of such summons so served on him, by registered mail, to the principal business office of such corporation, in this state, if the address of such office be known to him, but no failure on the part of such auditor to mail such copy of summons shall affect the validity of the service thereof.''

It appears from an affidavit filed in behalf of appellant that respondent has been a party in various cases in the United States district court for the district of Idaho and in our state courts. In the case of *U. S. v. Margaret Wilson and G. M. A. C. (Respondent)*, it is alleged by respondent that it ''is a corporation . . . . having complied with provisions of the State of Idaho''; in *G. M. A. C. (Respondent) v. Commercial Credit Co.*, District Court, Ada County, No. 12225, respondent alleged in its complaint '' . . . . duly qualified and empowered to transact its corporate business in the State of Utah . . . . ''; the demurrer raised its capacity to sue in Idaho, and the complaint amended to ''Idaho,'' as a typographical error it assumed, from the state of the record; in *G. M. A. C. (Respondent) v. Charles Haffke*, District Court, Ada County, respondent's verified complaint alleged: '' . . . . authorized to transact business in the state of Idaho . . . . ''; in *U. S. v. John Kloric*, United States District Court, No. 2319, in a petition of respondent verified by R. D. McLardy, assistant secretary, under date of February 19, 1932, it is stated that respondent ''was and now is duly licensed to transact its corporate business within the States of Idaho and Oregon''; and the same allegations were made in two

other cases, under the verification of McLardy, assistant secretary.

That McLardy was its assistant secretary and authorized to act for it in the verification of its pleadings in the above-mentioned cases, and to make the said representations, is not denied by the respondent, nor does the respondent deny that in those cases it alleged and represented that it "is qualified to do business within said state of Idaho," nor does respondent deny that it did not state and represent, under the oath of its assistant secretary, that it "was and now is duly licensed to transact its corporate business within the states of Idaho and Oregon."

In addition to showing that respondent had represented that it was duly qualified to transact business in this state, it was also shown by appellant that "at the time of the commencement of this action and the service of summons herein, and prior thereto, and since the commencement of this action, the defendant (respondent) was doing business in Ada County, State of Idaho; that the defendant has had stored in Boise, Idaho, certain refrigerators and radios which have been sold by the defendant in the regular course of trade, . . . . "

It was also shown by appellant by affidavit "that said corporation (respondent) does engage in business in this state and maintains a representative in the State of Idaho who usually resides at Boise or Nampa, Idaho.

"That the corporation (respondent) finances dealers in the purchase and sale of automobiles in two ways: (1) By purchasing direct from the dealers their automobile paper in Idaho, and accepting payments direct from the purchasers upon conditional sales contracts which are paid direct to the corporation by the purchasers, or (2) under their socalled 'floor plan,' dealers in Idaho are financed by advancing money for the purchase of cars from the manufacturer by the said corporation, and the cars remain on the floor of the dealer until sold, and the cash is paid to the G. M. A. C. or a conditional sales contract is given for the car when it is taken off the floor by the dealer.

"In the event the purchaser does not make payments, and defaults for a period of ninety days, or for any other reason such as seizure by the State or Federal Government for the transportation of liquor and the car not being able to be returned to the dealer within ninety days, the cars in either case become the property of the G. M. A. C., the above defendant, who, through their representative in the State of Idaho, repossess the car and returns the same to the dealer within the ninety-day period, or, if repossessed after the ninety-day period, the car becomes the property of the defendant and is sold by their representative in Idaho in direct competition with local dealers and persons engaged in the sale of used and new cars.

"That the G. M. A. C., the defendant (respondent) herein, handles electric refrigerators and radios in the same manner.

"That I have purchased during the years 1930 and 1931 five (5) automobiles from the defendant G. M. A. C., through their representative at Boise, Idaho; that the last car purchased was about a year ago, in June, 1931, which said cars were so purchased at Boise, Idaho."

On the other hand, it was shown by respondent in support of its motion to vacate the decree "that the business of said corporation is the loaning of money by discounting notes, mortgages and contracts to certain dealers in automobiles, airplanes and other products; that such notes, mortgages and contracts are mailed to the Home Office or some branch office of said General Motors Acceptance Corporation for approval; that said General Motors Acceptance Corporation has no branch or other office within the State of Idaho; that collections are made upon such notes, mortgages and contracts through correspondence, excepting where legal action is necessary to make collection; . . . . that said General Motors Acceptance Corporation has not been engaged in or doing business in the State of Idaho, and has had no transactions, excepting as hereinbefore mentioned."

And it was further shown by respondent in support of its said motion to vacate the decree that it had "checked into the statement made by Mr. Ertter (Secretary-Treasurer

of Appellant, who made an affidavit in behalf of appellant), that General Motors Acceptance Corporation stored or had stored in Boise, Idaho, certain refrigerators and radios which it sold in the regular course of trade, and this affiant has ascertained the fact to be that the only sales of any refrigerators and/or radios made by said General Motors Acceptance Corporation, was in pursuance of the collection of notes and mortgages covering the same, executed outside of the State of Idaho and payable outside of the State of Idaho, in accordance with the general practice of commercial credit companies discounting notes and mortgages, as hereinbefore set forth in affidavits on file herein.''

By failing to deny, respondent admitted that it had represented in both federal and state courts, and as late as February 19, 1932, within ten days after this suit was commenced, that it was duly licensed to transact business in this state; nevertheless, in the suit at bar, respondent would have this court understand that it is not doing business in this state. The showing made by appellant in opposition to respondent's motion to vacate the judgment is strongly supported by the declarations and representations made by respondent in the various cases above mentioned.

We conclude, therefore, that respondent was ''doing business'' in the state of Idaho, within the meaning of subdivision No. 3, section 5–507, I. C. A., sufficient to authorize service of process upon the county auditor.

Passing now to the question as to whether substituted service gave the district court jurisdiction to try the suit and enter judgment against respondent: In *Brooks v. Orchard Land Co., Ltd.*, 21 Ida. 212, 121 Pac. 101, this court ''held that the service of summons upon the county auditor is substituted service, and a substitute for personal service and gives the court jurisdiction the same as personal service to try the action and enter judgment.''

But it is contended by respondent that the service made in the case at bar was insufficient to give the district court jurisdiction to try the case and enter judgment because the auditor did not forward the process to any office or

officer of respondent, and that appellant ought to have shown that respondent's officers were outside of the state, before serving the county auditor.

In *Brooks v. Orchard Land Co., Ltd., supra,* this court says: "Where service is made in this way (by delivering a copy of the summons and a copy of the complaint to the county auditor), the law makes it the duty of the auditor to forward by registered mail to any such officer or agent of the company whose address may be known to him such copy, but no failure on the part of the auditor to mail such copy of the summons shall affect the validity of the service thereof . . . . "

In support of its contention that appellant ought to have shown respondent's officers were outside of the state, before serving the county auditor, respondent cites *Garrett v. Pilgrim Mines Co.,* 47 Ida. 595, 277 Pac. 567. The Pilgrim Mines Company, defendant in that case, was a domestic corporation. Its charter had been forfeited at the time the action against it was commenced. At the time the corporation was formed the directors lived in this state, and were living in the state at the time the action was commenced, but notwithstanding that fact, and the further fact that the company had ceased to exist as a corporation, the directors, who had, by reason of the forfeiture of its charter, become trustees, were not made parties nor served with process. In the Garrett case this court says:

"There is nothing to show the reason for service of summons, in the action brought in the probate court, upon the auditor of Ada County. Service may be so made when the officers of a defendant corporation are outside of the state, etc. (C. S., sec. 6676, now Section 5-507, I. C. A.), but it ought to be established that such is the fact in order that personal service may be dispensed with."

The said Pilgrim Mines Company was an Idaho corporation, and being an Idaho corporation, the presumption would be that some officer of the corporation could be found in the state upon whom process could be served, in the absence

of a showing that the officers had moved from or ceased to be residents of, or were absent from the state, but here the record shows that respondent is a foreign corporation, in which case the presumption would be that its officers, to wit, "president, secretary, cashier or managing agent," were outside of the state. It also appears from the record in the case at bar that respondent had no officer in Idaho upon whom process could have been personally served. The law does not require the doing of a useless thing. The respondent having no officer in Idaho upon whom personal service could be made, appellant served the county auditor, as provided by subdivision No. 3, section 5-507, I. C. A.

And further, in the case at bar, the reason for serving the county auditor appears in the return of the sheriff, in this: The sheriff, among other things, returned that he served the county auditor, "the said defendant being a foreign corporation and does not have any designated person or agent actually residing in Ada county, Idaho, the county in which the defendant is doing business in this state, upon whom process can be served."

Order reversed and cause remanded, with instructions to reinstate the judgment. Costs to the appellant.

Budge, C. J., Givens and Wernette, JJ., and Rice, D. J., concur.

ON PETITION FOR REHEARING.

(October 20, 1934.)

HOLDEN, J.—It is earnestly contended by respondent that it is a commercial credit corporation; that it engaged wholly in interstate business; that its business is loaning money by discounting notes, mortgages and contracts, covering automobiles, airplanes, refrigerators and radios; that such notes, mortgages and contracts are mailed to the home office, or some branch office, for approval, and that upon default of payment of any such note or contract it may repossess, and cause to be repaired, or reconditioned, and

then sell, any automobile, airplane, refrigerator or radio so repossessed, without being held to be amenable to the service of process of the courts of the state, and that the record does not show the presence of respondent in this state at the time of the service of summons upon the auditor of Ada county, as provided by subdivision 3 of section 5–507, I. C. A., and therefore that the trial court was without jurisdiction to enter judgment against it.

In opposition to the motion of respondent to vacate and set aside the judgment of the lower court, appellant filed an affidavit made by one Jim Roberts. In his affidavit Roberts states that he is acquainted with the manner in which respondent does business in the state of Idaho; that respondent maintains a representative in the state of Idaho, who usually resides in Boise or Nampa; that respondent does engage in business in this state, "by purchasing direct from the dealers their automobile paper in Idaho, and accepting payments direct from the purchasers upon conditional sales contract, which are paid direct to the corporation by the purchasers."

In other words, as we understand the Roberts affidavit, he states that respondent purchases paper in Idaho, and accepts payments on such paper in Idaho, direct from purchasers, and that for the transaction of such business, respondent maintains a representative, who usually resides at Boise or Nampa. It is shown by the affidavit of the secretary-treasurer of appellant that "at the time of the commencement of this action, and the service of summons herein, and prior thereto, the defendant (respondent) was doing business in Ada County, State of Idaho." It is thus made to appear that at the *time* of the commencement of the action, as well as at the *time* of service of summons, and prior thereto, respondent was *present* in this state, transacting business, by and through a local representative, apparently acting for it in the purchase of paper in this state, and in accepting payments on such paper in this state.

The respondent is a corporation; an artificial, and not a natural, person. Its presence in the state can only be

manifested by its officers, agents or representatives, through and by whom it must necessarily act in the transaction of its business.

Its course of conduct in purchasing paper in this state, and accepting payments on such paper in this state, and maintaining a representative in the state for that purpose, manifests the *presence* of respondent there, and constitutes the doing of business, sufficient to make it amenable to the process of the courts of this state.

"The presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the state."—*International Harvester Co. v. Kentucky*, 234 U. S. 579 [34 Sup. Ct. 944], 58 L. Ed. 1479, and cases therein cited. See also the recent case of *Steele v. Western Union Telegraph Co.*, [206 N. C. 220] 173 S. E. 583.

In conclusion, we may state that there is no precise test of the nature or extent of the business that must be done in order to constitute "doing business." All that is requisite is that enough business be done to enable the court to say that the corporation is present in the state; if a foreign corporation is doing acts of business in a state sufficient to show an intent to make it an effective part of its field of operation in the business for which it was created, such a corporation has subjected itself to the jurisdiction of that state. (18 Fletcher on Corporations, sec. 8713.)

We therefore adhere to and affirm the former opinion filed herein, for the reasons above stated.

Budge, C. J., Givens and Wernette, JJ., and Rice, D. J., concur.