THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SOUTH P. R. SUGAR CO. ET AL., Respondents.

No. 4.   Argued January 10, 1939.—Decided April 30, 1940.

*James R. Beverley* and *R. Castro Fernández* for respondents.   *George A. Malcolm, Attorney General,* and *Miguel Guerra-Mondragón, Rafael Rivera Zayas and Luis Venegas Cortés,* the latter associated counsel, for petitioner.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The Attorney General of Puerto Rico filed in this court a petition for the granting of an information in the nature of quo warranto in behalf of The People of Puerto Rico, against the three respondents in the above entitled case, in which it was alleged that the first named, a foreign corporation, South P. R. Sugar Co. (New Jersey), which herein-

after shall be called "the New Jersey corporation," through the co-respondents, South P. R. Sugar Co. (P. R.), which hereinafter shall be called "the domestic corporation," and the partnership Russell & Co. Succrs., which shall be known as Russell & Co., in contravention of the Organic Act of Puerto Rico (section 39) and of Act No. 47 of August 7, 1935 (Special Session Laws of 1935, p. 530), owns in this island 24,000 acres of land. The Attorney General further alleged that "the New Jersey corporation" owns the stock and interest or capital, respectively, of "the domestic corporation" and of "Russell & Co.," which it controls or manages, and that the latter are mere tools created by "the New Jersey corporation" for the purpose of evading the laws above cited prohibiting corporations from owning land in this Island in excess of 500 acres.

Upon the granting of leave to file the petition, the service of process on the respondents was ordered, which the marshal returned as served, as evidenced by the following certificate:

"Supreme Court of Puerto Rico—Office of the Marshal—I, William G. Látimer, Marshal of the Supreme Court of Puerto Rico, DO HEREBY CERTIFY: That the present summons was delivered to me at 11 a. m. of November 25, 1938, and that I served the same on the dates hereinafter stated, by delivering faithful copies thereof, of the quo warranto petition, of exhibits A, B, C, C–1, C–2, C–3, C–4, C–5, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, W, X, Y, Z, and AA, attached to said petition, and of the order of the Supreme Court dated November 23, 1938, on the following persons:

"On attorney James R. Beverley, as vice-president of 'The South Porto Rico Sugar Company' (domestic corporation), personally in his office at 1 Tetuán St., on this the 25th of November, 1938.

"On Carl S. Nadler, as managing partner of Successors of Russell & Co., personally in his office at Ensenada, Puerto Rico, on this the 29th of November, 1938.

"On Carl S. Nadler, as managing partner of Successors of Russell & Co., a firm which, according to allegations 8 and 9 of the petition, is the agent in Puerto Rico of 'The South P. R. Sugar Co.',

a foreign corporation incorporated under the laws of the State of New Jersey. Carl S. Nadler refused to be served with this summons on the grounds that Successors of Russell & Co., of which he is managing partner, is not agent in Puerto Rico for the aforesaid South Porto Rico Sugar Co., of New Jersey, and stated that he would return to the Supreme Court the above papers to stress his refusal to be served therewith; this the 29th of November, 1938.

"San Juan, Puerto Rico, December 2, 1938. (Signed) William G. Látimer, Marshal."

The three respondents appeared on December 20, 1938, and without submitting to the jurisdiction of this court, moved for the removal of the case to the District Court of the United States for Puerto Rico, on the ground that the present is a proceeding of a civil nature in which the amount involved, without including interest and costs, exceeds $3,000, and arises under the laws of the United States. Upon refusal to remove the case on January 24, 1939 (54 P.R.R. 122), "the New Jersey corporation," through a special appearance, filed a motion seeking to quash the service of process on the ground that the same is a foreign corporation, that many years ago it ceased to do business in this Island, that it has no official or agent in this jurisdiction to be served with process in its behalf, and that neither Russell & Co. nor Carl S. Nadler is or has ever been its agent in Puerto Rico, and that for many years back the petitioner has not done any business in this Island, either directly or through any other person or entity, and that under such facts, should this court assume jurisdiction and enter judgment against petitioner, it would deprive it of its property without due process of law. The motion closes with a prayer for quashing the summons and dismissing the complaint.

On January 10, 1939, a hearing took place in which the parties submitted evidence for and against the motion and were allowed ten days each for the filing of briefs, which was duly done. In the meantime, Rubert Hermanos, Inc., defendant in another quo warranto proceeding similar to

636

the one under consideration, appealed from an adverse judgment of this court to the Circuit Court of Appeals for the First Circuit, and as the latter court decided that our court was without jurisdiction to take cognizance of the case, we left pending the questions herein involved until a final determination of our jurisdiction. However, as the Supreme Court of the United States held that the Legislative Assembly of Puerto Rico acted within its powers in enacting Act No. 47, *supra,* and that this court, when deciding said case, acted with jurisdiction validly conferred by the Legislative Assembly (*The People of Puerto Rico* v. *Rubert Hermanos, Inc.,* decided on the 25th of last month), we shall proceed to a determination of the point raised by ''the New Jersey corporation'' regarding the validity of the service of summons.

The issue here is this: Is ''the New Jersey corporation'' doing business in Puerto Rico, through its agents and trustees, in such a manner and to such an extent as to warrant the inference that it is present in this Island and has subjected itself to its jurisdiction and its laws? *Philadelphia & R. Ry. Co.* v. *McKibbin,* 243 U.S. 264; 18 *Fletcher Cyclopedia Corporations, Revised and Permanent Edition,* p. 351, sec. 8713; *Boise Flying Service Inc.* v. *General Motors Acceptance Corp.,* 55 Idaho 5, 36 P. (2d) 813, 817.

There is no inflexible rule for determining what is meant by the phrase ''doing business'' so as to consider the foreign corporation as being present in the jurisdiction and subject to process through its agents. Each case must be determined on its own facts. *Fletcher,* volume cited, p. 338, sec. 8711; *International Harvester Co.* v. *Kentucky,* 234 U.S. 579.

Having established the legal rule for our guidance in order to determine whether ''the New Jersey corporation'' is doing business in Puerto Rico in such a manner and to such an extent to enable us to assume that it has subjected itself to process in this Island, we will examine the evidence submitted by both sides regarding the issue before us.

"The New Jersey corporation" was incorporated under the laws of New Jersey on November 16, 1900, some months after there went into effect the Joint Resolution of the Congress of the United States, approved on May 1, 1900, which forbids corporations to own in this Island land in excess of 500 acres. Said corporation did business directly in Puerto Rico and afterwards withdrew from this Island and its license was canceled. However, there were left doing business its subsidiaries South Porto Rico Sugar Co. (P. R.), incorporated under the laws of this Island on December 8, 1917, Ensenada Estate and Fortuna Estate. The only business of the first named has been the ownership and operation of a sugar mill known as Guánica Centrale, owning, besides, 400 acres of land, and the other two owned land which they applied to the planting and cultivation of sugar canes which were ground in the mills of the centrale. These entities were owned by "the New Jersey corporation."

On April 18, 1917, there was incorporated in Ponce the partnership Russell & Co., *S. en C.*, (Ltd.), whose silent partners were Arnold, Welty and Orde, and its managing partners Russell, Havemeyer and Dillingham, the two last named members of the Board of Directors of "the New Jersey corporation." The partnership capital amounted to $103,000, of which $100,000 was contributed by the three silent partners, as follows: Arnold, $40,000; Welty and Orde, $30,000 each. The three managing partners contributed only $1,000 each, making up the $103,000 already stated. The aims of this partnership were and still are the acquisition and operation of an undertaking for planting, cultivating and selling sugar cane, and the term of its duration until June 30, 1947. Its managing partner was Dillingham, president of "the New Jersey corporation." The profits of the partnership were to be distributed as follows: $1,000 annually each to the managing partners, and the balance to the silent partners. It was stipulated that the general administrative partner would reecive besides $3,000 as salary and that the managing

partners would not be liable for the debts and obligations of the partnership. It is to be observed that on the same day that said partnership became constituted in Ponce, the silent partners Arnold, Welty and Orde, through their attorney in fact, entered into a contract in Harpers Ferry, West Virginia, by virtue of which they conveyed to the American Colonial Bank, for the consideration of $100,000, all sums of money and other pecuniary profits that might accrue to them as silent partners of the agricultural partnership, either from benefits or from the distribution of capital, each one reserving to himself, however, a $500 annual share from the partnership profits and a $500 contribution each to the partnership capital.

Just on the very 18th of April, 1917, when the above two instruments were being executed in Ponce and in Harpers Ferry, respectively, another instrument, a trust agreement, was signed in the latter city by the silent partners and the American Colonial Bank as trustee, whereby $98,500 of the capital contributed by the silent partners, already conveyed by means of another instrument, and any benefits therefrom, would be handled by said trustee. It was further stipulated that the trustee should be controlled by the common stockholders of "the New Jersey corporation," and could be removed by them, the stockholders also being entitled to discontinue such trust if they thought fit. To this effect paragraph 5 of clause 2 of the trust agreement reads as follows:

"The trustee shall at all times exercise all the rights and powers which it may have as trustee, including all rights and powers relating to said partnership or its dissolution or liquidation or the distribution of its assets or change in its membership, or relating to the articles of said partnership, or the amendment thereof, or relating to any claim against the partnership or its general partners, in such manner as 80% in interest of the beneficiaries hereunder may direct. . ."

In this way the trustee controls $98,500, whereas the six partners only retain $4,500 out of the whole capital of

$103,000, it being incumbent upon said trustee to distribute the profits from said capital among the common stockholders of "the New Jersey corporation." In accordance with the above agreement in the stock certificates of "the New Jersey corporation" it is set forth as follows:

"This certificate entitles the owner, for the time being, of the shares of stock represented hereby to a beneficial interest in profits of Russell & Co., Sucesores, S. en Co., distributable under and pursuant to a certain Trust Agreement, dated April 18, 1917, between Edwin L. Arnold and others, and The American Colonial Bank of Porto Rico as trustee, said interest is inalienable except by transfer of the stock represented by this certificate and passes to any assignee of said stock."

This partnership, constituted on April 18, 1917, bought on August 18 of the same year from the Fortuna Estate forty-nine pieces of property for $869,833.62 and thirty-six more from Ensenada Estate for $907,497.19, paying for them in cash the sum of $1,777,330.81, which sum was lent to it by "the New Jersey corporation" on June 29, 1917, and subsequently, on August 18, 1917, executed a mortgage upon said estates, for a like sum, in favor of the mortgagee "the New Jersey corporation," for the same length of time as the partnership, that is, until June 30, 1947, with interest thereon at 8 per cent annually.

The above mortgage was conveyed by "the New Jersey corporation" to the South Porto Rico Sugar Co. (P. R.) whose shares of stock are held by the former.

After several changes which, due to death or sale of interest of the so called partners, have occurred, the partnership at present is made up of three managing partners, Cochran, Paine and Nadler, the first with a contribution of $1,000, and the last two with $1,500 each. None of them is paid any share in the profits nor is he liable for any loss. Cochran is paid an annual salary of $1,000; Paine is paid another salary of $4,800, and Nadler in his double capacity

of managing partner and general administrator is paid, respectively, as salaries $4,800 and $12,000 making a total of $16,800 yearly.

The evidence in support of its motion filed by "the New Jersey corporation," consists of three affidavits made by Dillingham, Paine and Nadler, respectively, in which the agency is denied, and of certain contracts for the planting and grinding of canes entered into between the partnership and the domestic corporation. This evidence, in our opinion, is not of much probatory value. *Industrial Research Corp.* v. *General Motors Corp.*, 29 F. (2d) 623, 626; *Henderson* v. *Richardson Co.*, 25 F. (2d) 225.

To our judgment, in view of the way in which the partnership Russell & Co., *S. en C.*, has been constituted (which firm is now Russell & Co., Sucesores), and bearing in mind that its so called partners do not share its profits and losses, which is contrary to the spirit of the partnership contract (section 1556, Civil Code); considering, besides, that the partnership is controlled and handled by the trustee, which in turn is controlled by the common stockholders of the foreign corporation who may, through the trustee, dictate the policy to be followed by the managing partners, etc., and in view, moreover, of the additional circumstance that all the profits of the partnership are distributed among the common stockholders of "the New Jersey corporation," it is our opinion that all the above circumstances tend to show that the foreign corporation is present and doing business in Puerto Rico through its agents, Russell & Co., Sucesores, and as the latter's general manager, Nadler, in such representative capacity, has been served with process, we must hold that the foreign corporation has been lawfully served and that this court has acquired jurisdiction *in personam* over the same.

From the foregoing, the motion to set aside the service of summons shall be denied and respondent South P. R. Sugar Co. (New Jersey) shall be allowed fifteen days for

filing new pleadings to the quo warranto petition, which term shall begin to run from the service of copy of the amended quo warranto petition which, pursuant to the order of the 24th inst., must be filed by petitioner.