El Pueblo de Puerto Rico, querellante, *v.* South P. R. Sugar Co. (Corporación de New Jersey), South P. R. Sugar Co. (Corporación Doméstica) y Russell & Co., Sucesores, demandados.

Núm. 4.—*Sometido:* Enero 10, 1939. *Resuelto:* Abril 30, 1940.

*James R. Beverley* y *R. Castro Fernández,* abogados de la demandada South P. R. Sugar Co. (Corporación de New Jersey); *Hon. Procurador General George A. Malcolm (B. Fernández García, Ex-Procurador General,* en los alegatos) y *Miguel Guerra-Mondragón, Rafael Rivera Zayas* y *Luis Venegas Cortés,* abogados asociados estos últimos, abogados del querellante, Pueblo de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El Procurador General de Puerto Rico presentó en este tribunal una solicitud para que se instruya información de la naturaleza de *quo warranto* a nombre de El Pueblo de Puerto Rico, contra las tres demandadas arriba nombradas, alegando que la primera, una corporación extranjera, South P. R. Sugar Co. (New Jersey), que en lo sucesivo llamaremos "la corporación de New Jersey", a través de las co-demandadas South P. R. Sugar Co. (P. R.), que en lo sucesivo llamaremos "la corporación doméstica", y la sociedad Russell & Co. Sucrs., que conoceremos por Russell & Co., en contravención de la Carta Orgánica de Puerto Rico (sección 39) y de la Ley núm. 47 de 7 de agosto de 1935 (Sesión Extraordinaria, pág. 531), está poseyendo tierras en esta Isla en cantidad de 24,000 acres. Alegó además el Procurador General que "la corporación de New Jersey" es dueña de las acciones e interés o capital respectivamente de "la corporación doméstica" y de la sociedad Russell & Co., que las maneja o controla, y que son éstas meros maniquíes creados por "la corporación de New Jersey" para evadir el cumplimiento de las leyes antes citadas, que prohiben a las corporaciones poseer tierras en esta Isla en exceso de quinientos acres.

Permitida la radicación de la solicitud, se ordenó el emplazamiento de las demandadas, y una vez diligenciado, fué devuelto por el márshal con el siguiente certificado:

· "Corte Suprema de Puerto Rico, Oficina del Márshal.—Yo, William G. Látimer, Márshal de la Corte Suprema de Puerto Rico, CERTIFICO:—Que recibí la presente citación a las 11:00 a. m. del día 25 de noviembre de 1938 y que notifiqué la misma en las fechas que a continuación se indican, entregando copias fieles de ella, de la petición de *quo warranto,* de los *exhibits* A, B, C, C-1, C-2, C-3, C-4, C-5, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, W, X, Y, Z y AA a dicha petición acompañados y de la resolución del Tribunal Supremo de fecha 23 de noviembre de 1938, a las siguientes personas:

"Al Lic. James R. Beverley, en su carácter de Vicepresidente de 'The South Porto Rico Sugar Company' (corporación doméstica) personalmente en su oficina sita en la calle Tetuán núm. 1, en San Juan Puerto Rico, hoy día 25 de noviembre de 1938.

"Al Sr. Carl S. Nadler, en su carácter de socio gestor (*managing partner*) de Russell & Co., Sucesores, personalmente en su oficina sita en Ensenada, Puerto Rico, hoy día 29 de noviembre de 1938.

"Al Sr. Carl S. Nadler, en su carácter de socio gestor (*managing partner*) de Russell & Co., Sucesores, firma social que, de acuerdo con las alegaciones 8 y 9 de la querella, es agente en Puerto Rico de 'The South P. R. Sugar Co.', corporación extranjera organizada bajo las leyes del Estado de New Jersey. El Sr. Carl S. Nadler se opuso a aceptar esta notificación alegando que Rusell & Co., Sucesores, de la cual él es socio gestor, no es agente en Puerto Rico de la susodicha South Porto Rico Sugar Co., de New Jersey, y manifestó que él devolvería a esta Corte Suprema estos documentos para recalcar su no aceptación de los mismos; hoy día 29 de noviembre de 1938.

"San Juan, Puerto Rico, hoy día 2 de diciembre de 1938.—(Fdo.) William G. Látimer, Márshal."

Comparecieron las tres demandadas el 20 de diciembre de 1938 y sin someterse a la jurisdicción de esta corte solicitaron el traslado del caso a la Corte de Distrito de los Estados Unidos para Puerto Rico, por el fundamento de ser éste un pleito de naturaleza civil en el que la cuantía envuelta, sin incluir intereses y costas, excede de $3,000 y surge bajo las leyes de los Estados Unidos. Denegado el traslado el 24 de enero de 1939 (54 D.P.R. 131), "la corporación de New Jersey", por medio de una comparecencia

especial, radicó una moción en la que solicitó se declarase nulo el emplazamiento, alegando que es una corporación extranjera, que hace muchos años cesó de hacer negocios en esta Isla, que no tiene oficial o agente en esta jurisdicción a quien pueda emplazarse en su representación, y que ni Russell & Co. ni Carl S. Nadler son ni han sido sus agentes en Puerto Rico, y que hace muchos años la peticionaria no hace negocios en esta Isla, ya directamente o a través de cualquiera otra persona o entidad, y que en tales condiciones, de asumir esta corte jurisdicción y dictar sentencia contra la peticionaria, la privaría de su propiedad sin el debido procedimiento de ley. Termina la moción con súplica de que se anule la citación y se desestime la demanda.

El 10 de enero de 1939 se celebró una audiencia en la que las partes presentaron sus pruebas en pro y en contra de la moción y se les concedió un plazo a cada una para la presentación de alegatos que oportunamente radicaron. Mientras tanto, Rubert Hnos. Inc., demandada en otro procedimiento de *quo warranto* semejante al que nos ocupa, apeló del fallo adverso de este tribunal para ante la Corte de Circuito de Apelaciones para el Primer Circuito, y habiendo resuelto dicha corte que este tribunal carecía de jurisdicción para entender del caso, dejamos pendiente las cuestiones aquí envueltas hasta tanto se determinase definitivamente nuestra jurisdicción; pero habiendo resuelto la Corte Suprema de los Estados Unidos que la Asamblea Legislativa de Puerto Rico actuó dentro de sus facultades al aprobar la Ley núm. 47 supra, y que este tribunal al resolver dicho caso actuó dentro de la jurisdicción válidamente conferídale por la Asamblea Legislativa (*The People of Puerto Rico* v. *Rubert Hnos. Inc.*, decidido el 25 del mes pasado), procederemos a resolver ahora la cuestión suscitada por "la corporación de New Jersey" sobre la validez del emplazamiento.

La cuestión en controversia es la siguiente: ¿Está "la corporación de New Jersey" haciendo negocios en Puerto

Rico, a través de sus agentes y fiduciarias, de tal forma y en tal grado que justifique la inferencia de que se halla presente en esta Isla y que se ha sometido a su jurisdicción y a sus leyes? *Philadelphia & R. Ry. Co.* v. *McKibbin,* 243 U.S. 264; 18 *Fletcher Cyclopedia Corporations, Revised and Permanent edition,* pág. 351, sec. 8713; *Boise Flying Service Inc.* v. *General Motors Acceptance Corporation,* 55 Idaho 5, 36 P. (2d) 813, 817.

No existe una regla inflexible para determinar qué se entiende por la frase *"haciendo negocios"* a los efectos de poder considerar la corporación extranjera como presente en la jurisdicción y sujeta a ser emplazada por medio de sus agentes. Cada caso debe resolverse por sus propios méritos. Fletcher, tomo citado, pág. 338, sec. 8711; *International Harvester Co.* v. *Kentucky,* 234 U.S. 579.

Establecida la regla legal que ha de guiarnos para determinar si "la corporación de New Jersey" está haciendo negocios en Puerto Rico de tal forma y en tal grado que podamos inferir que ha quedado sujeta a ser emplazada en esta Isla, examinaremos la prueba que una y otra partes nos han presentado sobre la cuestión en controversia.

"La corporación de New Jersey" fué organizada de acuerdo con las leyes de dicho estado el 16 de noviembre de 1900, unos meses después de estar en vigor la Resolución Conjunta del Congreso de los Estados Unidos, de primero de mayo de 1900, que prohibe a las corporaciones poseer en esta Isla tierra en exceso de 500 acres. Dicha corporación hizo negocios directamente en Puerto Rico y algún tiempo después se retiró de esta Isla, siendo cancelada su licencia. Sin embargo, quedaron haciendo negocios sus subsidiarias South Porto Rico Sugar Co. (P.R.), organizada bajo las leyes de esta Isla el 8 de diciembre de 1917, Ensenada Estate y Fortuna Estate. La primera sólo se ha dedicado a poseer y explotar la factoría de azúcar conocida por Guánica Centrale, poseyendo además unos 400 acres de terreno, y las otras dos poseían tierras que dedicaban principalmente a la siem-

bra y cultivo de cañas de azúcar que eran molidas en la factoría de la primera. Estas entidades eran poseídas por "la corporación de New Jersey."

El 18 de abril de 1917 se constituyó en Ponce la sociedad *(partnership)* Russell & Co., S. en C., siendo sus socios comanditarios los Sres. Arnold, Welty y Orde, y sus gestores los Sres. Russell, Havemeyer y Dillingham, los dos últimos, miembros de la Junta de Directores de "la corporación de New Jersey." El capital social fué de $103,000, del cual aportaron $100,000 los tres comanditarios, en la siguiente proporción: Arnold, $40,000, y Welty y Orde, $30,000 cada uno. Los tres gestores sólo aportaron $1,000 cada uno, lo que hace un total de $103,000 como dijéramos antes. Los fines de esta sociedad eran y son adquirir y operar una empresa para sembrar, cultivar y vender caña de azúcar y su término de duración hasta el 30 de junio de 1947. El socio administrador era el Sr. Dillingham, Presidente de "la corporación de New Jersey." Los beneficios de la sociedad se habían de distribuir en la siguiente forma: $1,000 anuales para cada uno de los gestores, y el remanente para los comanditarios. Se estipuló que el socio administrador percibiría además un sueldo de $3,000 y que los socios gestores no responderían de las deudas y obligaciones de la sociedad. Es de notar que el mismo día en que en Ponce se constituía esta sociedad, los comanditarios Arnold, Welty y Orde, a través de un apoderado, celebraban un contrato en Harpers Ferry, West Virginia, a virtud del cual cedían al American Colonial Bank, por la suma de $100,000, todas las cantidades de dinero y otros beneficios pecuniarios que en su carácter de comanditarios tuviesen derecho a percibir de la sociedad agrícola, bien por ganancias o ya por reparto de capital, reservándose cada uno, sin embargo, una participación de $500 anuales en las ganancias de la sociedad y una aportación de $500 cada uno en el capital social.

Precisamente el mismo día 18 de abril de 1917 en que estos dos documentos se otorgaban en Ponce y en Harpers

Ferry respectivamente, otro documento, un *trust agreement,* se firmaba en esta última ciudad por los socios comanditarios y el American Colonial Bank como *trustee,* por el cual $98,500 del capital en comandita ya cedido por el otro documento y las ganancias que produjera serían administrados por dicho *trustee.* Se estipuló además que el *trustee* estaría bajo el control de los accionistas comunes de "la corporación de New Jersey" y podría ser destituído por ellos, pudiendo también los accionistas dar por terminado el *trust* cuando lo estimaren conveniente. A este efecto dice el inciso 5 de la cláusula 2 del *trust agreement:*

"The trustee shall at all times exercise all the rights and powers which it may have as trustee, including all rights and powers relating to said partnership or its dissolution or liquidation or the distribution of its assets or change in its membership, or relating to the articles of said partnership, or the amendment thereof, or relating to any claim against the partnership or its general partners, in such manner as 80% in interest of the beneficiaries hereunder may direct . . ."

De esta suerte el *trustee* tiene el control de $98,500 mientras los seis socios sólo retienen $4,500 del capital total de $103,000, siendo obligación de dicho *trustee* repartir el beneficio de dicho capital entre los accionistas comunes de "la corporación de New Jersey." En armonía con este convenio, en los certificados de acciones de "la corporación de New Jersey" se consigna lo siguiente:

"This certificate entitles the owner, for the time being, of the shares of stock represented hereby to a beneficial interest in profits of Russell & Co., Sucesores, S. en C., distributable under and pursuant to a certain Trust Agreement, dated April 18, 1917, between Edwin L. Arnold and others, and The American Colonial Bank of Porto Rico as trustee, said interest is inalienable except by transfer of the stock represented by this certificate and passes to any assignee of said stock."

Esta sociedad, que se constituyó el 18 de abril de 1917, compró el 18 de agosto del mismo año, a Fortuna Estate.

cuarenta y nueve fincas por $869,833.62, y otras treinta y seis a Ensenada Estate por $907,497.19, pagando por ellas en efectivo un total de $1,777,330.81, suma que le fué prestada por ''la corporación de New Jersey'' el 29 de junio de 1917, y más tarde, el 18 de agosto de 1917, constituyó hipoteca sobre dichas fincas, por igual cantidad, a favor de la acreedora, ''la corporación de New Jersey'', por el mismo término que había de durar la sociedad, o sea hasta el 30 de junio de 1947, con intereses al 8 por ciento anual.

La hipoteca en cuestión fué cedida por ''la corporación de New Jersey'' a la South Porto Rico Sugar Co. (P.R.), cuyas acciones posee totalmente la primera.

Después de los distintos cambios que por motivos de muerte o venta del interés de los llamados socios han ocurrido, la sociedad se compone actualmente de tres socios gestores: Cochran, Paine y Nadler, el primero con una aportación de $1,000, y $1,500 cada uno de los restantes. Ninguno de ellos recibe participación alguna en las ganancias ni responde de pérdidas. Cochran percibe un sueldo de $1,000 anuales, Paine percibe otro de $4,800, y Nadler, en su doble carácter de socio administrador y administrador general, percibe dos sueldos, de $4,800 y $12,000 respectivamente, montantes a $16,800 anuales.

La prueba que en apoyo de su moción presentó ''la corporación de New Jersey'', consiste de tres *affidavits* de los Sres. Dillingham, Paine y Nadler, respectivamente, en los que se niega la agencia, y de ciertos contratos sobre siembra y molienda de cañas, celebrados entre la sociedad y la corporación doméstica, evidencia que, a nuestro juicio, no tiene gran fuerza probatoria. *Industrial Research Corp.* v. *General Motors Corp.,* 29 F. (2d) 623, 626; *Henderson* v. *Richardson Co.,* 25 F. (2d) 225.

A nuestro juicio, considerada la forma en que se ha constituído la sociedad Russell & Co., S. en C., razón social que actualmente es Russell & Co. Sucesores, habida cuenta del hecho de que sus llamados socios no participan en las pér-

didas y ganancias, lo cual es contrario a la naturaleza del contrato de sociedad (art. 1556, Código Civil), considerando además que la sociedad está controlada y manejada por el ·trustee, quien a su vez lo está por los accionistas del capital común de la corporación extranjera, quienes pueden a través del trustee dictar la política a seguir por los socios administradores, etc., y considerada además la circunstancia adicional de que todos los beneficios de la sociedad se distribuyen entre los accionistas comunes de "la corporación de New Jersey", opinamos que todas estas circunstancias tienden a demostrar que la corporación extranjera está presente haciendo negocios en Puerto Rico a través de su agente Russell & Co., Sucesores, y habiendo sido emplazado el administrador general de esta última, Sr. Nadler, en tal capacidad representativa, debemos resolver que la corporación extranjera ha sido legalmente citada y que esta corte ha adquirido jurisdicción *in personam* sobre ella.

*Procede, por lo expuesto, desestimar la moción sobre nulidad de emplazamiento y conceder a la demandada South P. R. Sugar Co. (New Jersey), un plazo de quince días para radicar nuevas alegaciones contra la querella, plazo que empezará a contarse a partir de la fecha en que se le notifique con copia de la querella enmendada que a virtud de la resolución de 24 del actual deberá presentar el querellante.*