·Argued January 14, peremptory writ ordered April 8,
peremptory writ issued May 11, 1953

# STATE OF OREGON ex rel. RICCO v. BIGGS,
## Circuit Judge
### 255 P. 2d 1055

*Martin P. Gallagher* argued the cause for plaintiff. On the brief were Gallagher & Gallagher, of Ontario.

*Charles W. Swan,* District Attorney, of Vale, argued the cause and filed a brief for defendant.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

TOOZE, J.

This is an original proceeding in mandamus, instituted by the state of Oregon, ex rel. Marie Ricco, as plaintiff, against M. A. Biggs, as judge of the circuit court of the state of Oregon for the ninth judicial district, as defendant, to require the defendant to decide on the merits a motion for a change of venue in a criminal case involving an alleged misdemeanor.

On August 26, 1952, an indictment was returned by the grand jury for Malheur county, Oregon, charging the plaintiff Marie Ricco with the crime of keeping a bawdyhouse. Omitting formal parts, said indictment is as follows:

"Marie Ricco is accused by the Grand Jury of the County of Malheur by this Indictment of the crime of keeping a bawdyhouse committed as follows:

"The said Marie Ricco on the 20th day of April, A. D., 1952, in the said County of Malheur and State of Oregon, then and there being, did then and there willfully and unlawfully keep, set up, suffer and permit to be kept and set up in a house, to-wit: the East Side Hotel located at 120 S. E. 2nd Street in the City of Ontario in said County and State, a house of ill fame, brothel and bawdyhouse for the purpose of prostitution, fornication and lewdness, the said Marie Ricco then and there being the owner, lessor and lessee of said establishment, and to the possession of which she, the said Marie Ricco, was then and there entitled, contrary to the

statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.''

Upon arraignment, plaintiff (defendant in the criminal action) entered a plea of ''not guilty''. Thereafter and on September 11, 1952, the plaintiff filed her motion for a change of venue in said criminal action, on the ground and for the reason, as she alleged, that she could not obtain a fair and impartial trial of said cause in Malheur county. Said motion was supported by affidavit, setting forth in detail the facts upon which it was based. The district attorney filed a counter-affidavit.

On September 13, 1952, the motion for change of venue came on regularly for hearing before the above-named defendant, M. A. Biggs, as judge of the circuit court for Malheur county. Upon the conclusion of said hearing, there was entered in said criminal proceeding an order which denied said motion on the ground and for the reason that ''under the provisions of Sections 26-311 and 26-312, O.C.L.A., and the case of *State v. Swanson,* 119 Ore. 522, this Court does not have jurisdiction and authority to change the place of trial to another County in a cause involving a misdemeanor.''

On October 31, 1952, plaintiff filed in this court her petition for a writ of mandamus to compel defendant ''to exercise his judicial discretion in either granting or denying the motion [for change of venue] upon its merits''. The petition set forth all the material facts.

Thereafter, on November 6, 1952, a hearing was held before this court, sitting in banc, to determine whether we should assume original jurisdiction in this proceeding. We assumed jurisdiction and entered an

order directing the issuance of an alternative writ of mandamus. The writ, omitting formal parts, is as follows:

"The State of Oregon to the Honorable M. A. Biggs, Circuit Judge of the Ninth Judicial District of the State of Oregon.

"WHEREAS, it manifestly appears to this Court by the verified Petition of the above named plaintiff that:

"I

"You, the Honorable M. A. Biggs, at all times herein mentioned are the duly elected, qualified and acting Circuit Judge of the State of Oregon for the Ninth Judicial District, and at all times herein mentioned you were and are exercising all of the duties and perogatives [sic] of said office under common law adopted by the State of Oregon, and the Constitution of Oregon and the statutes of the State of Oregon.

"II

"That the plaintiff herein was indicted by the Grand Jury of Malheur County, Oregon, of the crime of maintaining a house of ill fame. That said crime is an indictable misdemeanor. That thereafter she was arraigned in the Circuit Court of the State of Oregon for the County of Malheur and thereafter entered her plea to said charge of not guilty. That all of such proceedings were had in a certain criminal action pending in the Circuit Court of the State of Oregon for the County of Malheur, entitled The State of Oregon vs Marie Ricco, No. 827, that said cause is now pending in said Court.

"III

"That thereafter said plaintiff herein and the defendant in said criminal action filed with the Clerk of said Court a certain Motion seeking an order to change the place of trial of said cause from Malheur County to Harney County or any other County in the State of Oregon, on the grounds and

for the reasons that she could not obtain a fair and impartial trial in Malheur County, Oregon. That said Motion was made in good faith and not for the purpose of delay and for the grounds therein stated.

"IV

"That thereafter said Motion came on for hearing and after argument of counsel you, the said Honorable M. A. Biggs, announced that you did not feel that you had the power or authority to entertain the Motion upon its merits upon the grounds and for the reasons that said charge was for a misdemeanor and that the Circuit Court did not have the authority to grant the change of place of trial of a crime involving only a misdemeanor.

"That said order provided among others 'It is Ordered and Adjudged that Defendant's Motion for Change of Place of Trial of the within cause be, and the same is hereby denied on the ground and for the reason that under the provisions of Sections 26-311 and 26-312, O.C.L.A., and the case of State vs. Swan[son], 119 Ore. 522, this Court does not have jurisdiction and authority to change the place of trial to another County in a cause involving a misdemeanor.'

"V

"That unless the defendant, the said Honorable M. A. Biggs, as such Circuit Judge does not consider the Motion of the plaintiff filed in the criminal case on its merits and either deny the Motion for change of place of trial or grant the same after having exercised your discretion thereon, the plaintiff herein does not have a speedy, adequate, clear remedy at law for the determination of the question whether or not she, plaintiff herein, is entitled to a change in place of trial of said criminal action.

"WHEREAS, by an Order of this Court duly given and made in the above entitled suit on the 6th day of November, 1952, it was ordered that a Writ of Mandamus issue to you.

"THEREFORE:

"WE DO COMMEND that you, after the receipt of this Writ, or within such time as may be allowed by this Court, that you shall hear said Motion for change of place of trial considering the evidence adduced for you, both for the plaintiff and defendant in the criminal action and that you do decide said Motion upon its merits, or that you show cause before this Court at the courtroom thereof at Salem, Oregon, on the 14th day of November, 1952, at the hour of 10 o'clock —M. on that day why you have not done so."

The matter is now before us upon defendant's demurrer to the alternative writ on the ground that it fails to state a cause of action.

Defendant contends that it appears upon the face of the writ that this court is without jurisdiction to order the issuance of a peremptory writ of mandamus herein, because, if done, we would be controlling judicial discretion. He argues that his ruling and order upon the motion for change of venue were within his discretion, and that there was no abuse of discretion in making them. He maintains that he had jurisdiction to pass upon the motion; that this jurisdiction vested in him the power to decide erroneously as well as correctly; and that, for a mistake in judgment, it cannot be said that he abused his discretion.

Section 11-302, OCLA, respecting the writ of mandamus, provides:

"It may be issued to any inferior court, corporation * * * to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; but though the writ may require such court, corporation * * * to exercise its or his judgment, or proceed to the discharge of its or his functions, it *shall not control*

*judicial discretion.* The writ shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law." (Italics ours.)

In *State ex rel. Bethke v. Bain,* 193 Or 688, 702, 240 P2d 958, we said:

" 'Judicial discretion', as used in the statute, means the option which a judge may exercise either to do or not to do that which is proposed to him that he shall do; it is the right to choose between the doing and not doing of a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done; it is the exercise of the right legally to determine between two or more courses of action."

"Discretion" is defined in *State v. Lewis,* 113 Or 359, 364, 230 P 543, 232 P 1013, as follows:

"Discretion is the power exercised by courts to determine questions to which no strict rule of law is applicable, but which from their nature and the circumstances of the case are controlled by the personal judgment of the court: Bouvier's Law Dict. *It cannot be exercised where a strict rule of law is applicable* as the term 'discretion' implies the absence of any such rule. Where there is a clearly defined and well-settled applicable rule of law the courts are bound to enforce the rule and discretion is at an end." (Italics ours.)

■■ It has become hornbook law in this state that the writ of mandamus cannot be used as a means of controlling judicial discretion, nor as a substitute for appellate review. The statute restricts its use to instances involving the performance of an act which the law specially enjoins. Mandamus will never lie to compel a court to decide a matter within its discretion in any particular way. It will lie, however, to compel

a court to assume and exercise its jurisdiction to decide a matter properly before it, though it cannot control or direct what the decision shall be. The rules governing the use of the writ of mandamus, its purposes, and its limitations have been stated and restated by this court many times. *State ex rel. Bethke v. Bain,* supra; *State ex rel. v. Duncan,* 191 Or 475, 230 P2d 773; *State ex rel. v. Dobson,* 171 Or 492, 135 P2d 794, 137 P2d 825; *State ex rel. v. Crawford,* 159 Or 377, 80 P2d 873; *Riesland v. Bailey,* 146 Or 574, 31 P2d 183, 92 ALR 1207; *State ex rel. Hupp etc. Corp. v. Kanzler,* 129 Or 85, 276 P 273; *State ex rel. Sullivan v. Tazwell,* 123 Or 326, 262 P 220, 276 US 613, 72 LE 731, 48 S Ct 324, 277 US 575, 72 LE 995, 48 S Ct 527. We do not propose to review those decisions. The rules are well established. The difficulty, if there is any difficulty, lies in the application of the rules to the particular facts of the case under consideration.

In the instant case it appears from the writ that the defendant did not decide the motion for a change of venue upon its merits; that is, he did not decide whether or not the facts were sufficient to warrant a change of venue. Had he decided that question and, in the light of such decision, denied the motion, it is conceded that the writ of mandamus could not be used to review his holding; it could have been reviewed only on appeal. But that was not the basis of his order denying the motion. The order affirmatively shows to the contrary. He refused to decide the motion upon the merits solely because, as stated in the order, the court had no jurisdiction to consider it. Counsel for defendant suggests that this part of the order may and should be rejected as surplusage. We do not agree. It is an integral part of the order itself.

■ It is obvious that if under a clearly defined and well-settled applicable rule of law the defendant did have jurisdiction to consider and decide the motion on its merits, it was a positive duty on his part to do so. *State ex rel. Sullivan v. Tazwell,* supra. In such circumstances, his refusal to do so would not constitute an exercise of judicial discretion on his part. As stated in *State v. Lewis,* supra: "Where there is a clearly defined and well settled applicable rule of law *the courts are bound to enforce the rule and discretion is at an end.*" (Italics ours.)

There are, of course, many cases where a decision upon a legal issue would be deemed an exercise of judicial discretion and wholly beyond the reach of mandamus. *State ex rel. v. Malheur County Court,* 54 Or 255, 101 P 907, 103 P 446, is such a case. But, as we said in *State ex rel. Bethke v. Bain,* supra, at page 703: "However, where the facts are not in dispute, and there exists a strict rule of law that is applicable, no question of 'judicial discretion' arises. The trial judge is under the positive duty of correctly applying the applicable rule of law."

To determine, therefore, whether mandamus is available to plaintiff in this case, we must, of necessity, decide whether under a clearly defined and well-settled applicable rule of law the circuit court for Malheur county had jurisdiction to consider plaintiff's motion for change of venue upon its merits. That is the principal issue involved in this proceeding.

However, before discussing the paramount question, we will consider defendant's contention that plaintiff's only remedy is that of appeal from a final judgment of conviction.

█ Mandamus is an extraordinary remedy and is not a writ of right; it will never issue unless the duty sought to be enforced is one legally defined. Neither will it issue where there is a plain, speedy, and adequate remedy in the ordinary course of law. However, to bar mandamus, the law remedy must afford all relief to which the plaintiff is entitled. *State ex rel. Hupp etc. Corp.*, supra. The primary function of a writ of mandamus is to enforce an established right and to enforce a corresponding imperative duty created or imposed by law. It is designed to promote justice. It may issue even where other remedies exist, if they are not sufficiently speedy to prevent material injury. Propriety of the issuance of the writ is determined by the inadequacy, and not the mere absence, of other legal remedies and the danger of a failure of justice without it. *State ex rel. Pierce v. Slusher,* 117 Or 498, 501, 244 P 540.

█ The question before us for decision on the merits involves constitutional questions affecting the rights of plaintiff. If she is correct in her contentions, then she is entitled to the immediate protection of her constitutional rights without the contingency and expense of an appeal to the Supreme Court after conviction. *Straub v. State of Oregon et al.,* 121 Or 451, 255 P 897.

█ Plaintiff is accused in the indictment above quoted of the crime of "keeping a bawdyhouse", in violation of the provisions of § 23-919, OCLA. The crime charged is a misdemeanor, the maximum punishment for which, on conviction, is one year in the county jail. The keeping of a bawdyhouse was an indictable misdemeanor at common law. It is a crime malum in se, and not merely malum prohibitum. The commission of

the crime involves moral turpitude. 1 Bishop, Criminal Law 9th ed, 807, 809, §§ 1083, 1087a; 58 CJS 1200, Moral Turpitude.

In *Ruble v. Kirkwood,* 125 Or 316, 320, 266 P 252, "moral turpitude" is defined:

> " 'An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man or to society in general contrary to the accepted and customary rule of right and duty between man and man.' "

It is manifest from the motion for a change of venue that if the allegations of fact in support thereof are true, plaintiff might not be able to obtain a fair and impartial trial in Malheur county. In the light of the actual prejudice alleged, if it in truth exists, a trial in that county would indeed be a mockery. However, we indicate no opinion as to the merits of the motion. If plaintiff had a definite legal right to have her motion considered on its merits, the defendant had a corresponding legal duty to so consider it, and his refusal to do so, no matter upon what grounds he may have based such refusal, justifies the use of the writ of mandamus to compel him to act.

Simply stated, the primary question to be answered in this case is: Is the motion for a change of venue available to a defendant in a criminal prosecution involving an alleged misdemeanor, or is such a motion limited to cases involving felonies?

Section 26-311, OCLA, provides:

> "*Except as* in this chapter otherwise specially provided, all criminal actions *must be commenced and tried* in the county where the crime was committed." (Italics ours.)

Section 26-312, OCLA, provides:

> "In an action for *a felony,* when the cause is at

issue upon a question of fact, the court may order the place of trial to be changed, as follows:

"(1) When it appears by affidavit, to the satisfaction of the court, that *a fair and impartial trial* can not be had in the county where the action is commenced;

"(2) When the action is commenced in one county, and might have been commenced in another, the place of trial may be changed to such other county, if it appears in like manner that the ends of justice, the convenience of parties and witnesses, would be promoted thereby; and,

"(3) That the motion is not made for delay." (Italics ours.)

The language used in § 26-311, supra, is mandatory. "All criminal actions *must be commenced and tried* in the county where the crime was committed" are the obligatory words used. (Italics ours.) That is tantamount to prohibiting their trial in any other county. In effect, it denies a change of venue, no matter what the circumstances may be. If that statute stood alone, there could be no change of place of trial in any criminal case, but from its operation, cases involving felonies are excepted. § 26-312, OCLA, supra. In such cases a change of venue is authorized so that "a fair and impartial trial" may be had. Inasmuch as a change of place of trial is authorized only in felony cases, the effect of the statutes is to expressly deny such relief in cases involving misdemeanors. Expressio unius est exclusio alterius.

Therefore, under the express provisions of the foregoing statutes, if they are valid laws, the circuit court has no authority or jurisdiction to consider or allow a motion for a change of venue in a criminal case where a misdemeanor is charged.

That squarely presents the question whether those statutes are constitutional.

Art. 1, § 11, Oregon Const., in part provides:

"In *all criminal prosecutions,* the accused shall have the right to public trial *by an impartial jury* in the county in which the offense shall have been committed; * * *." (Italics ours.)

The United States Constitution has guarantees similar to those above provided: Amendment VI, Const. of US.

The right to a public trial "by an impartial jury" has been interpreted by all courts as meaning a right to "a fair and impartial trial".

■ The constitutional protection given an accused person is divided into two parts: (1) a guarantee of "a fair and impartial trial"; and (2) a trial in the county where the crime was committed. The first guarantee is the real gist of the provision. The second is designed for the sole purpose of insuring and aiding the first; that is to say, it is an incident of the primary right to "a fair and impartial trial".

■ For the purpose of securing a fair and impartial trial, an accused may waive his right to be tried in the county where the crime was committed, and does waive it when he applies to the court for a change of venue. However, only the accused may waive the right. *State v. Black,* 131 Or 218, 282 P 228. The constitutional guarantees are for the protection of the accused; they do not secure any rights to the state.

In *State v. Olds,* 19 Or 397, 427, this court said:

"* * * Every person charged with a public offense whether guilty or not is entitled to a fair trial. * * * In order to insure such a trial, the

constitution of this State, section 11 of article 1, has provided: 'In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed,' etc. The securing to parties *accused of crime* a fair trial by an impartial jury, * * *, has ever been the solicitude of the common law. * * *

"The importance of any immunity, however, does not depend so much upon constitutional guarantees as it does upon their observance and enforcement.

"The violation of the spirit of the law is as pernicious in its consequences as the violation of its letter. The right of the accused *in a criminal case* to a trial by jury would be of little advantage if the jury had to come from a community biased and prejudiced against him by influences which he was unable to countervail." (Italics ours.)

In *U'Ren v. Bagley*, 118 Or 77, 82, 245 P 1074, the late Justice BELT, in speaking for the court, said:

"We take as a premise the truism that every citizen is entitled to *a fair and impartial trial. To secure that sacred and constitutional right,* legislation undoubtedly may be enacted." (Italics ours.)

In 23 CJS 274, Criminal Law, § 961, it is said:

"Under constitutional or statutory guarantees thereof, *every person accused of crime is entitled to a fair and impartial trial,* in which the legal rights of such accused person are safeguarded, protected and respected; that is, a trial on the facts, in accordance with the law and the evidence * * * *before an unbiased tribunal* * * * free from harmful error, and from any extraneous influence that might be to his prejudice." (Italics ours.)

Also see *Straub v. State of Oregon et al.*, supra; *State v. Humphreys*, 43 Or 44, 70 P 824.

 The constitution provides that "in *all* criminal prosecutions" the accused shall have "a fair and impartial trial". (Italics ours.) It makes no exceptions. The "keeping of a bawdyhouse" is a crime, and the trial of an accused on an indictment charging such crime is a "criminal prosecution". The plaintiff is a defendant "in a criminal case". The constitutional protection accorded an accused to a fair and impartial trial does not itself limit its guarantee to criminal cases involving felonies. It is all-inclusive.

█ The constitutional rights of an individual are fundamental and inalienable rights. They cannot be destroyed nor diminished by legislative act, or failure to act. The duty of seeing that they are protected and preserved inviolate falls squarely upon the shoulders of the judiciary. The performance of this duty is one of the inherent powers of the court, a power which the legislature can neither curtail nor abolish.

In *Crocker v. Justices of Superior Court,* 208 Mass 162, 94 NE 369, 377, 21 Ann Cas 1061, the court said:

"* * * Our system of government has created the executive, the legislative and the judicial, as three independent and co-ordinate departments, and in strong and comprehensive language has prohibited each from attempting to exercise the functions of either of the others 'to the end that it may be a government of laws and not of men.' *The courts of general jurisdiction* under such a Constitution *have the inherent power* to do whatever may be done under the general principles of jurisprudence to insure to the citizen *a fair trial,* whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require." (Italics ours.)

The Massachusetts court thoroughly reviewed the history of the right to a fair and impartial trial and to a change of place of trial, at common law. It cited and quoted from a number of English decisions. Its conclusions as above stated are based upon its exhaustive review of all the authorities. A proper regard for the necessity of limiting the length of this opinion as much as possible is all that restrains us from quoting more extensively from the Massachusetts case. We approve of its reasoning and conclusions. Also see *Barry v. Traux,* 13 ND 131, 99 NW 769, 112 Am St Rep 662, 65 LRA 762; *State v. Albee,* 61 NH 423, 60 Am Rep 325.

In *People v. Gersewitz,* 294 NY 163, 167, 61 NE2d 427, 429, the New York court said:

"The court has nonetheless recognized, at the same time that courts have always asserted and exercised authority which, though not expressly established by statute, is 'based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives, and to prevent oppression or persecution.' 'It is a power,' the court said, 'which the legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional.' (People v. Glen, 173 N.Y. 395, 400, 66 N.E. 112, 114.)"

█ Denial of a fair and impartial trial in a criminal case, whether the crime charged is either a felony or misdemeanor, would be a violation of the Fourteenth Amendment to the federal constitution. It would constitute a denial of due process.

In 16 CJS, Constitutional Law, 1185, § 591, the rule is stated:

"Due process of law in a criminal case requires

not only a trial or hearing before judgment and condemnation, *but also a fair and impartial trial or hearing* according to the due and orderly course of the law * * *." (Italics ours.)

Also see *State v. Justice Court,* 32 Wash2d 544, 202 P2d 927.

In *State v. Humphreys,* supra, at page 56, we said:

"The organic law of the state guarantees to the accused *in all criminal prosecutions* the right to a public trial by an impartial jury in the county in which the offense shall have been committed: Const. Or. Art. 1, § 11. The right to change the place of trial, however, in an action for a felony, is expressly conferred by statute, and may be exercised when it appears by affidavit to the satisfaction of the court that a fair and impartial trial cannot be had in the county where the action is commenced: Hill's Ann. Laws, § 1222." (Italics ours.)

Our statement must not be understood as meaning that "the right" to change the place of trial in an action for a felony exists only by virtue of the statute. The right to change the place of trial is based upon the constitutional right of the accused to a fair and impartial trial, and exists wholly apart from the statute. The statute merely provides the procedure for enforcing this right. It is elementary that a constitutional right of an individual may be, and frequently is, subjected to reasonable rules and regulations for the enforcement and protection thereof; but any such rules and regulations must not only be reasonable, but also must be for the enforcement and protection of the right, and not in denial thereof. *Tomasek v. State,* 196 Or 120, 248 P2d 703.

Inasmuch as the statute governing procedure in connection with a change of venue in a criminal case

refers only to an action for a felony, it may be argued that there is no method by which a change of place of trial can be effected in an action for a misdemeanor. However, where a consitutional right exists, it may not be defeated by legislative failure to act. If no procedure to enforce the right is prescribed by statute, then the court may proceed according to the course of the common law. In *Crocker v. Justices of Superior Court,* supra, the procedure at common law for securing a change of venue is fully stated. Section 26-312, OCLA, supra, is but a declaration of the common law rules of procedure respecting all criminal prosecutions.

■ We hold that under the express provisions of Art 1, § II, Const. of Oregon, supra, an accused person in a criminal prosecution for a misdemeanor has a constitutional right to a fair and impartial trial and, to enforce that right, is entitled to move for and obtain a change of venue whenever it appears to the satisfaction of the court that a fair and impartial trial cannot be had in the county where the crime was committed.

■ Sections 26-311, OCLA, and 26-312, OCLA, supra, insofar as they may be construed as denying the right of an accused person to secure a fair and impartial trial by a change of venue in an action for a misdemeanor, are unconstitutional and void.

We are not unmindful of what this court said in *State v. Swanson,* 119 Or 522, 525, 250 P 216. That was a case involving a charge of assault and battery. Defendant moved the trial court for a change of venue, which motion was denied. In discussing that matter, we said:

"On this appeal by the defendant, it is assigned as error that the court erred in refusing to allow the defendant's motion for a change of venue. He

made affidavit of the publication of sundry prejudicial articles in the newspapers. There were no opposing affidavits filed. This, however, does not make the showing of the defendant conclusive. A change of venue, when allowable at all, is within the discretion of the trial judge, which cannot be gainsaid unless an abuse of that prerogative is shown. *Moreover, a change of venue may not be had except in cases where the crime charged is a felony:* Sections 1390, 1391, Or. L. [§§ 26-311, 26-312, OCLA].'' (Italics ours.)

We have examined the original briefs filed in this court in the Swanson case. The question of the constitutionality of the statutes in question was not presented nor argued in the briefs, nor was it discussed by this court in its opinion. In their respective briefs, counsel discussed the motion for a change of venue on its merits. The trial judge had simply denied the motion, without assigning any reasons therefor. Presumably, he denied it upon its merits. In denying it, he exercised a judicial discretion, and, as pointed out, his exercise of such discretion could not ''be gainsaid unless an abuse of that prerogative is shown.'' No such abuse was shown. The emphasized portion of the above quotation was unnecessary to the decision and should be disregarded as being mere dictum. As authority for the proposition that there can be no change of venue in an action for a misdemeanor, the statement in *State v. Swanson,* supra, is expressly overruled.

■ Not only did the circuit court for Malheur county have the jurisdiction to hear and decide plaintiff's motion for a change of venue on its merits, but also under a clearly defined and well-settled applicable rule of law, it was its positive duty to do so. In such circumstances, mandamus is a proper remedy to enforce performance of this judicial duty.

The demurrer to the alternative writ of mandamus is overruled. As defendant has indicated his purpose to stand on his demurrer, it is ordered that a peremptory writ issue.

WARNER, J., concurs in the result.

LATOURETTE, C. J., specially concurring.

I specially concur with the majority and take issue with the dissenting opinion as follows:

It is stated therein that:

" '* * * Judge Biggs has not refused to exercise his judicial function. He has merely (according to the court's decision) determined erroneously a question of the validity of a statute, following the precedent established by this court in State v. Swanson, 119 Or 522, 250 P 216.

" * * * * *

" '* * * The purpose of the writ of mandamus now issued is not to 'compel the performance of an act which the law specially enjoins.' § 11-302, OCLA. That act was a judicial determination of the legal question presented by the motion for a change of venue in the criminal case, and it has already been performed. The defendant necessarily held that the statute is constitutional and that was as much an exercise of the judicial function as a decision of this court holding the statute unconstitutional. The court now would control the defendant's judicial discretion by telling him he should have determined that question in the same way that this court determines it. This we could properly do were the case here on appeal. We have no right to do it by mandamus."

It is true that defendant inferentially held the statute in question constitutional; however, the true basis of his holding is contained in his language as follows:

" '* * * this Court does not have jurisdiction

and authority to change the place of trial to another County in a cause involving a misdemeanor.'.''

No judicial authority is cited to sustain the language quoted from the dissenting opinion. On the other hand, the authorities are contra. For instance, in *State ex rel. Sullivan v. Tazwell,* 123 Or 326, 332, 262 P 220, it is stated that:

"There is no doubt that the Circuit Court for Multnomah County has inherent power to hear the case of relator *versus* Luckenbach Steamship Company. That court has refused to hear that case. He has refused because he disclaims jurisdiction over the person of the defendant in that case. The law seems to be well settled that where a court declines jurisdiction by a mistake of law *mandamus* will lie to compel him to proceed to hear and determine the case: Merrill on Mandamus, §§ 203-205, 207; 38 C.J. 610; Zachary v. Polk County Court, 74 Or. 58, 62-64 (144 Pac. 1182); In re Grossmayer, 177 U. S. 48 (44 L. Ed. 665, 20 Sup. Ct. Rep. 535); In re Connaway, 178 U. S. 421, 425 (44 L. Ed. 665, 1134, 20 Sup. S[C]t. Rep. 951); In re Hohorst, 150 U. S. 653, 663, 664 (37 L. Ed. 1211, 14 Sup. Ct. Rep. 221); Hill v. Morgan, 9 Idaho 718 (76 Pac. 323).''

Another case is *State ex rel. Pardee v. Latourette,* 168 Or 584, 125 P2d 750. It was my experience, while sitting as circuit judge, to have been mandamused in the above case. There, I held that the circuit court had jurisdiction over one Pardee, a nonresident driver of an automobile involved in an accident, where service of complaint and summons was made on the secretary of state pursuant to what I though was the law in such cases made and provided. In an original mandamus case filed in this court, it was held that the court over which I presided had no jurisdiction over the defendant Pardee, and an alternative writ was issued com-

manding me to vacate the order that I had theretofore entered assuming jurisdiction. It is interesting to note that the writer of the dissenting opinion joined in the opinion of the court in that case.

It is apparent from the above cases that it is the settled law in this state that no discretion is involved when a court is called on to decide whether or not it has jurisdiction.

LUSK, J. (dissenting).

I regret my inability to agree with the opinion of the court. I think that the alternative writ was improvidently granted, and that it should be dismissed for this reason, if for no other. Judge Biggs has not refused to exercise his judicial function. He has merely (according to the court's decision) determined erroneously a question of the validity of a statute, following the precedent established by this court in *State v. Swanson,* 119 Or 522, 250 P 216. In its discussion of the substantive question presented the court relies in part upon the opinion written by Judge Rugg in *Crocker v. Justices of the Superior Court,* 208 Mass 162, 94 NE 369. If this court had followed with equal fidelity the reasoning of Judge Rugg upon the question of the propriety of issuing a writ of mandamus in that case it would not now make peremptory the alternative writ, but would dismiss the proceeding. Whether mandamus would lie was the first question considered in the Crocker case. The court's affirmative answer to that question was based upon the fact that the trial court had entered an order with the following recital: *"I refuse to hear the parties* on the several motions of the defendants that the court order a trial of these indictments in some county other than the county of Suffolk, believing that I have no jurisdiction to enter-

tain or to grant such motions." (Italics added.) The court first construed this endorsement, saying:

"* * * It is perhaps susceptible of two constructions, one that the court has considered the subject matter, and ruled as matter of law that it has no jurisdiction of such motions, the other that the court has abdicated its province and refused to exercise its judicial function, adding by way of parenthesis that its excuse is a belief that it has no jurisdiction in the premises. Ordinarily we should be loath to adopt the latter construction. But the language appears to be strongly phrased with an evident intent to convey that thought, *and an examination of the papers discloses that, as originally entered, an unequivocal ruling of law was made disposing of the motion. If that had stood as the final action of the Superior Court, the only remedy of the defendants would have been by exception or appeal under R. L. c. 219, §§ 32, 34, 35.* But it did not so stand, and the action of that court was changed to a statement of declination even to hear the parties. We are constrained therefore to interpret the order as a refusal to act at all upon the motions." (Italics added.)

The opinion proceeded:

"But one of the ancient offices of this writ was to compel action by lower judicial tribunals respecting matters properly before them and within their jurisdiction. If such courts decline to exercise their judicature or to decide matters pending before them, mandamus has always been regarded as the appropriate means by which to set in motion their jurisdictional power. It lies to compel the performance of whatever appertains to the duty of lower courts, where there has been for any reason a refusal to act. Its agency in cases of this class is confined to setting in motion the judicial activities so that a decision will be reached, but it does not extend to any direction as to what that decision ought to be."

The opinion upon this phase of the case concludes:

"It was the plain duty of the justices of the Superior Court to consider and exercise their judicial faculty upon the subject matter presented by the motions filed in that court, and either overrule them as matter of law or determine whether they ought to be granted. French v. Jones, 191 Mass. 522. Cheney v. Barker, 198 Mass. 356. As we construe the indorsement of the Superior Court upon the motions to be a mere refusal to act, and not the expression of any opinion or ruling, the provisions of R. L. c. 219, §§ 32, 35, authorizing an aggrieved defendant in a criminal case to appeal from a judgment of the Superior Court founded upon matter of law apparent upon the record and to allege exceptions to an opinion, ruling, direction or judgment upon any question of law, do not apply, and there appears to be no other adequate remedy open to the petitioners except this petition."

It would appear to be plain from the foregoing that, had the justices of the Superior Court in that case proceeded as did the defendant in this case, the Massachusetts court would not have issued the writ of mandamus. The defendant in this case, as the order made by him and set forth in the opinion of the court shows, considered the motion, the statute of this state which limits the right to change of venue to felony cases, and a decision of this court applying it, and concluded that he had no jurisdiction to grant the relief sought. Unlike the Massachusetts Superior Court judge, he heard the parties. This was not the abdication, but the exercise, of the judicial function. The purpose of the writ of mandamus now issued is not to "compel the performance of an act which the law specially enjoins." § 11-302, OCLA. That act was a judicial determination of the legal question presented by the motion for a change of venue in the criminal case, and

it has already been performed. The defendant necessarily held that the statute is constitutional and that was as much an exercise of the judicial function as a decision of this court holding the statute unconstitutional. The court now would control the defendant's judicial discretion by telling him he should have determined that question in the same way that this court determines it. This we could properly do were the case here on appeal. We have no right to do it by mandamus. Mandamus is an extraordinary writ, and it is certainly an extraordinary use of it when an appellate court resorts to it in a case where the circuit judge has governed his decision of a legal question presented to him for determination by the clear command of a statute which has been a part of the laws of this state since 1864.

Upon the substantive question involved, I join with my brethren in their devotion to the principle of an individual's right to a fair and impartial trial in a criminal case, whether the charge be felony or misdemeanor. But I think that we should not lose sight of the fundamental rule that courts do not strike down a legislative act unless its conflict with the constitution is clear beyond a reasonable doubt. The statute here under consideration does not so appear to me. The constitution says nothing of the remedy of change of venue. That was a device originally resorted to, in the exercise of their inherent jurisdiction, by the common law judges of England, as Judge Rugg showed with so much learning in Crocker v. Justices of the Superior Court, supra, and which is today regulated by statute in this country. 22 CJS 300, Criminal Law, § 187. It is a remedy given in aid of the constitutional guarantee, but it is no part of the guarantee. The Crocker case

does not so decide. No authority, either text writer or judicial decision, that I have seen treats it as a constitutional right. Certainly the opinion of this court refers to no such authority. The repeated encomiums in the cases cited in the court's opinion upon the constitutional right to trial by a fair and impartial jury are not statements that the remedy of change of venue is such a right. That claim has rarely been made. In the state of Texas the statute authorizing change of venue in a criminal case like ours applies only to felonies. In *Patton v. State,* 124 Tex Cr 656, 65 SW2d 308, the court sustained the statute as against a challenge to its constitutionality. See, also, *Cotton v. State,* 32 Tex 614. In the section of 22 CJS previously cited it is said: "Subject to constitutional restrictions, the right to a change of venue in criminal cases and the extent and manner of exercising such right are matters of statutory regulations; the legislature may take away the right altogether * * *." To the last statement is cited the case of *Stamp v. Commonwealth,* 200 Ky 133, 253 SW 242, in which the defendant complained of the trial court's action in overruling his motion for a change of venue. The court called attention to the rule that such an application was addressed to the discretion of the trial court, and said arguendo: "The right to change of venue in a criminal case is one provided by statute, and the Legislature has authority to provide the extent and manner of its exercise. It might take it away altogether, or it could change the method of invoking it." See, also, 16 CJ 203, Criminal Law, § 305. In *Dulany v. The State,* 45 Md 99, it was argued by the defendant that the right of removal under a provision of the Maryland constitution was in force when the indictment was filed, that it should govern his case, and that the right was a vested one

which could not be impaired by any subsequent amendment. The court answered this contention by saying: "A *right conferred* in regard to the removal of causes does not fall within the class of vested rights. *It is but a remedy given* to secure an impartial trial, which at any time may be altered or modified by the proper authority." (Italics added.) Idaho has a statute similar to ours denying the right to a change of venue in misdemeanor cases. This statute was sustained in the case of *State v. Cowen*, 29 Ida 783, 162 P 674. The question of constitutionality of the law appears to have been raised, though the court did not expressly pass upon it. The court did, however, issue a writ of prohibition against the district court which had granted a change of venue in a misdemeanor case.

In *State v. Backus*, 165 Wis 179, 161 NW 759, the court said:

"It seems clear that the right to a change of venue in this state is regulated by statute. This is declared by the decisions in this court on the subject. The effect of such decisions is stated in French v. State, 93 Wis. 335, 67 NW 709:

" 'The right to a change of venue depends entirely upon the statute. It is not guaranteed by Const. art. 1, § 7, or any other provision of the Constitution. As the right exists only by virtue of the statute, a change of venue can be had only upon the terms the statute prescribes.' "

In *State ex rel. Cottrell v. Wofford*, 119 Mo 408, 24 SW 1009, the question was whether the defendant in a felony case was entitled to have the case removed to some county other than 13 counties named by him in which he claimed the inhabitants were so prejudiced against him that he could not obtain a fair and impartial trial. In holding against the defendant the court

referred to the statute which authorized removal "to another circuit, in which such prejudice is not alleged to exist", and rejected the application as going beyond the terms of the statute properly construed. The court said: "The right to a change of venue is purely statutory, and has no existence outside of the special grant of power to award it." In *State v. Headrick,* 149 Mo 396, 51 SW 99, a murder case in which the defendant had failed to comply with a provision of the statute requiring the affidavit of two compurgators in support of an application for a change of venue, the court, in holding that it was not error to deny the application, said: "Again and again we have ruled that the right to a change of venue is purely statutory, and the parties seeking it must comply with the substantial requirements of the statute."

In this state the statute here in question was applied in the case of *State v. Swanson,* supra. The opinion of the court says that the following statement made in that case, "a change of venue may not be had except in cases where the crime charged is a felony", is dictum. I disagree. The question of what is or is not dictum was discussed by Mr. Justice BELT, speaking for the court in *Woodard v. Pacific Fruit & Produce Co.,* 165 Or 250, 256, 106 P2d 1043, 131 ALR 832. He quoted with approval the following from *Coombes v. Getz,* 217 Cal 320, 18 P2d 939:

"* * * where the court bases its decision on two or more distinct grounds, each ground so specified is, as much as any of the others, one of the grounds, a ruling upon questions involved in the case, and not 'mere dictum'."

The opinion in *State v. Swanson* was written by Mr. Justice BURNETT, who was not given to careless utter-

ance. The decision of the question of change of venue was based upon two grounds: one, that no abuse of the discretion of the trial judge in denying the application appeared, and the other that a change of venue may not be had except where the crime charged is a felony. Both grounds were good. Either was sufficient and neither was dictum. Furthermore, the validity of the statute was assumed in *Packwood v. State,* 24 Or 261, 263, 33 P 674, in an opinion written by Mr. Justice ROBERT S. BEAN.

Suppose the criminal action out of which this proceeding grows were transferred for trial to Harney County, and the plaintiff (defendant in the criminal action) should then conclude that in that county also there existed such a prejudice among the inhabitants against her that she could not obtain a fair and impartial trial. Suppose that she then made application for another change of venue with a sufficient showing in support of it. Would this court say that such application should be granted? I think that the court could do nothing else without abandoning the very basis of its decision, for, if the defendant has a constitutional right to a change of place of trial from the county where the offense is committed on a showing by affidavit that she is unable to obtain a fair and impartial trial there, she would have the same right in the case which I have assumed. But, as the numerous decisions, both civil and criminal, cited in the annotation in 104 ALR 1494 illustrate, "Provisions expressly limiting the number of changes of venue or from judge have been almost universally considered mandatory in nature, and have been rigidly adhered to, notwithstanding circumstances or reasons submitted which might otherwise clearly justify granting a change." *Idem.,* 1495.

See, also, 56 Am Jur 50, Venue, § 45. I quote further from the ALR annotation at the page just cited:

"The difficulty of fixing definite rules on the subject arises from the fact that the right, as such, is based upon statute entirely, and that, whatever differences of view may exist with respect to the common-law or inherent right of courts to order changes of venue, it is to the statutes on the subject that litigants must go, upon which their rights must be based, and the terms of which must be followed. As pointed out many times, there was no absolute 'right' to such changes at common law, and in the absence of statutory creation the change may be more properly called a 'privilege.'

\* \* \* \* \*

"Inasmuch as the common-law conception of changes of venue or from judge seems to have been very indefinite and uncertain, not embodying any 'right' in the common acceptation of that term, and the whole subject, even under statute, apparently has been considered mainly as a matter of procedure, the constitutionality of statutes relating thereto, upon the objection of actual limitation of number, has seldom been called into question."

The decision in *Crocker v. Justices of the Superior Court,* so much relied on by the majority, proceeds upon the inherent power of the Massachusetts courts, as legitimate successors to the jurisdiction exercised by the common law judges of England, to transfer causes from one county to another. No statute limiting the power was involved, and we do not know and need not speculate what the decision would have been had the court been called upon to deal with such a statute. Respecting inherent power, however, we may just as well face the facts of judicial life in Oregon. They are not the same as in Massachusetts and other eastern states having a similar historical background. Under our

constitution (original Art VII, §§ 1 and 9, and amended Art VII, §§ 1 and 2, and statutes enacted pursuant thereto) our circuit courts do not exercise all the inherent powers of the common law courts. See *Starr v. Laundry Union,* 155 Or 634, 643, 63 P2d 1104. To give only a few illustrations, they do not have the rulemaking power, the judges are not permitted to comment on the evidence when instructing juries, and a judge may be disqualified from sitting in a case by a mere motion, which is not essentially different from a peremptory challenge to a juror. By constitutional amendment, moreover, circuit judges in this state have been stripped of their common law jurisdiction to set aside a verdict because it is against the weight of the evidence or for excessive damages. These are facts so well known that I forbear to cite chapter and verse. Judge Rugg, in the Crocker case, referred to cases from other jurisdictions which appeared to be in conflict with his holding, among others *Commercial National Bank v. Davidson,* 18 Or 57, 65, 66, 22 P 517. Respecting these decisions he said:

"\* \* \* Almost without exception also they are by courts whose history does not extend through a Provincial and Colonial period, and whose jurisdiction is not the inheritance of so close a connection by statutory reference and by the adoption and growth of custom to the court of England as in this Commonwealth. It is perhaps true of the newer States that the powers of courts even of general jurisdiction are more technically dependent upon the terms of statutes than in States where the development of jurisdiction has been more slow and wrought in part only by detailed enactments and in part by reference to the powers of the common law courts of England."

Inherent powers of common law courts such as are exercised by courts of original jurisdiction in Massachusetts and some other states of the union may be in Oregon the substance of things hoped for, but they have little relation to actualities here. I happen to be one of those who would have it otherwise, but I do not believe that the judges of this court have a commission to remold our judicial system nearer to the heart's desire.

A legislative power, which so far as I know has never been questioned, is the power to prescribe the venue of actions, both civil and criminal. But the legislature has never conferred jurisdiction on any circuit court to try a misdemeanor case in any county save the county in which the offense is committed. From what source, then, would the court derive power to try this case in a different county, should it be transferred? Manifestly, from no valid source. It could be accomplished only by an unjustified assumption of legislative authority.

The privilege of change of venue is an aid—an important one I freely concede—in the fulfillment of the constitutional guarantee of trial by fair and impartial jury, but it is not of the essence of the guarantee, and no court, so far as I am aware, has ever so held. The essence of the guarantee consists in the protection of the defendant in a criminal case against conviction by a prejudiced jury. Courts are zealous to afford the defendant a fair trial, and convictions in which this essential element of due process is wanting are not permitted to stand. It may be asked, why should the defendant in a misdemeanor case be subjected to the risk of a trial in a community whose inhabitants are prejudiced against him? Perhaps, as a matter of

policy, he should not be, but in this state the legislature has determined that in criminal cases the privilege of change of venue should be granted only in prosecutions for felony. This the legislature had the right to ordain. A state constitution, unlike the federal constitution, is one of limitation and not a grant of powers, and any act adopted by the legislature, not prohibited by the fundamental law, must be held valid, and this inhibition must expressly or impliedly be made to appear beyond a reasonable doubt. *State v. Cochran,* 55 Or 157, 179, 104 P 419, 105 P 884. I can find nothing in the enactment today declared unconstitutional which is forbidden by the organic law.